UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

W. BLAKE VANDERLAN, M.D.                                                               PLAINTIFF

V.                                                        CIVIL ACTION NO. 3:23-CV-258-DPJ-FKB

JACKSON HMA, LLC                                                                      DEFENDANT

ORDER

There are four pending motions in this employment-retaliation case. For the reasons explained in this Order, Defendant Jackson HMA's motion to dismiss [3] is denied; Plaintiff Dr. Blake Vanderlan's motion to amend the complaint [6] is granted as to Count IV; Defendant's motion to strike [9] Plaintiff's declaration [5-1] is granted; and (4) Plaintiff's motion to convert Defendant's motion to dismiss to a motion for summary judgment [11] is denied.

I.      Facts and Procedural History

The Court addressed the facts and procedural history on May 11, 2020, and incorporates that order by reference. *See* Order [115] in 3:15-CV-767. In short, Vanderlan worked for Jackson HMA at the Central Mississippi Medical Center (CMMC) in Jackson, Mississippi. He says that after joining CMMC, he learned that the center had been violating the Emergency Medical Treatment and Labor Act (EMTALA) and state regulations by engaging in "patient dumping." Am. Compl. [2] at 3. Patient dumping occurs when a medical provider refuses to admit or prematurely transfers patients unable to pay. Vanderlan further says Jackson HMA falsely certified that it complied with EMTALA as a prerequisite for seeking payment under Medicare and Medicaid. *Id.* at 10. When he complained about the alleged violations to Jackson HMA, it retaliated and eventually forced his resignation.

In October 2015, Vanderlan filed a qui tam action against Jackson HMA, advancing claims on behalf of the United States for the alleged violations. He also asserted that Jackson HMA retaliated against him for being a "whistleblower" under the False Claims Act (FCA). 31 U.S.C.§ 3730(h). The case then stalled for two years while the United States considered intervening. It declined and, almost one year after that, moved to dismiss five of the six counts Vanderlan pleaded, citing its "unfettered right" to seek dismissal of an action brought in its name. *Swift v. United States*, 318 F. 3d 250, 252 (D.C. Cir. 2003). The Court granted the motion, dismissing Counts I, II, III, V, and VI of the First Amended Complaint. Order [123] in 3:15-CV-767. Vanderlan later sought reconsideration based on new legal authority.

Considering that authority, the Court severed the retaliation claim asserted in Count IV from the rest and now addresses the motions related to it. Specifically, Jackson HMA moved to dismiss, arguing that Vanderlan failed to state a plausible FCA whistleblower claim. Def.'s Mem. [4] at 8–11. Vanderlan opposed that motion, relying in part on his own declaration, but he separately sought leave to amend his complaint. The proposed amended complaint augment the FCA whistleblower claim but also added an EMTALA retaliation claim. When Jackson HMA then moved to strike Vanderlan's declaration, Vanderlan moved to convert Jackson HMA's motion to dismiss to one for summary. All motions are fully briefed.

II.     Standard

The motion to dismiss and motion to amend invoke Federal Rules of Civil Procedure 12(b)(6) and 15(a). When considering a motion to dismiss under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6)

motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 15(a) provides that leave to amend must be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Accordingly, "the district court must have a 'substantial reason' to deny a request for leave to amend." *Id.* (quoting *Dussouy*, 660 F.2d at 598). The Court "may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Id.* (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998)). An amendment is futile if it "would fail to state a claim upon which relief

could be granted." *Neal v. Lee County*, No. 1:08-CV-262-B-D, 2010 WL 582437, at *2 (N.D. Miss. Feb. 12, 2010) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). "To determine futility, the court applies 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Id.* (quoting *Stripling*, 234 F.3d at 873).

III.   Analysis

Jackson HMA's motion to dismiss, coupled with Vanderlan's motion to amend the complaint, tee up two claims: (1) a new EMTALA retaliation claim; and (2) the original FCA whistleblower claim.

    A.   EMTALA Retaliation Claim

The First Amended Complaint asserts no retaliation claims under EMTALA, but Vanderlan seeks leave to add one. According to him, Jackson HMA violated 42 U.S.C. § 1395dd(i) by retaliating against him for exposing and complaining about EMTALA violations. Under § 1395dd(i), "[a] participating hospital may not penalize or take adverse action . . . against any hospital employee because the employee reports a violation of a requirement of this section." Jackson HMA opposes the request, claiming it is delinquent and prejudicial.[1]

Jackson HMA first says the EMTALA retaliation allegations Vanderlan seeks to add are not "new to him." Def.'s Resp. [14] at 6. So he could have asserted this claim five years ago in his original complaint, or three years ago in his First Amended Complaint, but he waited until after Jackson HMA had filed its third motion to dismiss. *Id.* at 6–7. While the Court understands Jackson HMA's concern, granting leave to amend is a matter of discretion.

---

[1] Jackson HMA also argues that the proposed amended complaint would be futile but limits that argument to the FCA whistleblower claim. *See* Pl.'s Reply [17] at 6; Def.'s Resp. [14] at 8.

*Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996). And neither the delay nor the claimed prejudice outweighs the liberal right to amend.

First, the age of this case is misleading. As is often true in a qui tam action, the United States took almost two years deciding whether to intervene. It declined but indicated that it might invoke § 3730(c)(2)(A). Order [24] in 3:15-CV-767 (declining intervention); Order [77] in 3:15-CV-767 (staying case while United States considered invoking § 3730(c)(2)(A)). About a year later, the United States moved to dismiss five of the six counts, which resulted in protracted briefing. Order [123] in 3:15-CV-767 (granting motion to dismiss [80]); *see* Motions [82, 83, 85, 92, 96, 101, 108, 111, 120] in 3:15-CV-767 (filed during pendency of motion to dismiss [80]). Further delay occurred after the Court granted the Government's motion to dismiss because both the Fifth Circuit and the Supreme Court heard cases considering the Government's authority under § 37030(c)(2)(A). That resulted in a stay that still affects the severed qui tam action, and there were other stays along the way. So while the dispute is old, it remains in the pleading stage, and no discovery has occurred. That mitigates any claimed prejudice.

Second, while the motion to amend came after Jackson HMA filed three motions to dismiss, the prejudice is minimal. When Vanderlan first amended the complaint in October 2017, Jackson HMA consented, and that amended complaint mooted its first motion to dismiss. *See* Nov. 6, 2017 Text-Only Order in 3:15-CV-767. The Court terminated its second motion to dismiss as to the retaliation claim in Count IV (without prejudice) when it dismissed the other counts and invited Vanderlan to re-evaluate his interest in pursuing Count IV. *See* Order [123] at 7 in 3:15-CV-767. Once he announced his intention to pursue Count IV, Jackson HMA filed the third motion to dismiss and thus prompted the motion for leave to amend. In short, the Court has

5

never considered the merits of Jackson HMA's motions to dismiss, and Jackson HMA's inconvenience does not outweigh the liberal right to amend.

Finally, while it remains unclear why Vanderlan previously omitted an express reference to EMTALA retaliation, the facts supporting that claim are still apparent from the First Amended Complaint [2].  For example, Vanderlan said that in late May/early June 2013, he met with administrative staff and "presented his concerns about multiple systematic EMTALA compliance violations."  Am. Compl. [2] at 16; *see id.* at 17 (alleging that after he accepted the position of Trauma Director, he "discovered and continued to report additional EMTALA violations").  Soon after, Jackson HMA "worked to relieve Relator Vanderlan of his call coverage arrangement with two other surgeons and removed Relator Vanderlan and another cross-covering physician from the trauma and general surgery call schedule."  *Id.*  He also claims that, while reinstatement of full privileges was under discussion, "staff made it clear to [him] that his insistence on reporting violations was making it difficult for them to consider reinstatement to full privileges."  *Id.* at 18.

Jackson HMA acknowledged these allegations when opposing Vanderlan's motion to amend, so the factual assertions are no surprise.  *See* Def.'s Mem. [14] at 2.  And while it would have been better to cite EMTALA retaliation earlier, the case remains at the pleading stage, so Vanderlan should receive leave to specify the legal basis for the factual claims he already asserted.  *Cf. Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (reversing summary judgment and instructing district court to allow plaintiffs to clarify the legal basis for claims because "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement

of the legal theory supporting the claim asserted").[2]  Vanderlan's motion to amend and add an express EMTALA retaliation claim to Count IV is granted.

      B.      FCA Whistleblower Claim

Jackson HMA moved to dismiss Vanderlan's FCA whistleblower claim, arguing that he failed to factually plead a plausible claim.  When Vanderlan bolstered his factual basis through his motion to amend, Jackson HMA contended that the amendments would be futile.

"The whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), encourages employees with knowledge of fraud to come forward by prohibiting retaliation against employees who assist in or bring qui tam actions against their employers."  *U.S. ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371–72 (5th Cir. 2011) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)).

> To establish a claim under § 3730(h), a party must show (1) that [he] was engaged in protected activity with respect to the False Claims Act; (2) that [his] employer knew [he] was engaged in protected activity; and (3) that [he] was discharged because [he] was engaged in protected activity.

*Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (citing *Robertson*, 32 F.3d at 951).

Protected activity includes acts "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."  31 U.S.C. § 3730(h)(1).  In other words, "the activity must be 'in furtherance of' uncovering fraud or potential fraud against the Government."  *U.S. ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 395 (5th Cir. 2016) (quoting 31 U.S.C. § 3730(h)(1)).  "For internal complaints to constitute protected activity 'in furtherance of' a qui tam action, the complaints must concern false or fraudulent claims for

---

[2] *Johnson* is not a perfect fit, but it adds weight to allowing an amendment at this early procedural stage.

payment submitted to the government." *Shaw Servs., L.L.C.*, 418 F. App'x at 372 (quoting 31 U.S.C. § 3730(h); *also citing Robertson*, 32 F.3d at 951).

This is where Jackson HMA says Vanderlan falls short because he "makes no allegation that he complained about false claims or fraud against the government." Def.'s Mem. [4] at 8. It insists that Vanderlan complained about EMTALA compliance violations only and "such internal reports concerning regulatory noncompliance do not constitute protected activity." *Id.* at 9. Jackson HMA further reasons that even if he did engage in protected activity, he has not alleged that Jackson HMA "was on notice of that activity." *Id.* at 10. And finally, without knowledge of the protected activity, Jackson HMA could not have discharged Vanderlan because of it. *Id.* at 11.

To begin, the cases Jackson HMA primarily cites were decided under the summary-judgment standard—after discovery had taken place. *See Robertson*, 32 F.3d at 952 (affirming summary judgment when plaintiff "failed to present sufficient evidence to support a finding that Bell was aware that his investigations were in furtherance of a *qui tam* action"); *Thomas*, 517 F. App'x at 263 (affirming summary judgment based on "finding that Thomas did not submit evidence establishing any of the three required elements of a prima facie case"); *Patton*, 418 F. App'x at 372 (affirming summary judgment).

The Rule 12(b)(6) standard is less demanding. It "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556). Vanderlan may have established a reasonable expectation in the First Amended Complaint because he alleged that Jackson HMA violated EMTALA by engaging in "patient dumping" and other practices, then fraudulently certified EMTALA compliance when seeking Medicare and

8

Medicaid reimbursement. *See* Am. Compl. [2] at ¶¶ 3–4. He also claimed that he repeatedly complained about the EMTALA violations. *See, e.g., id.* ¶¶ 59–60. While he did not plead that he complained to Jackson HMA about the link between EMTALA and fraudulent Medicaid claims, it is plausible that Jackson HMA would have understood that connection.

But even if the First Amended Complaint failed to plausibly link the alleged EMTALA violations to Medicaid reimbursements, a court should not dismiss a claim "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted).

Here, Vanderlan hopes to fill the factual gap through his proposed amended complaint. For example, he claims:

> 82.    **Before being forced to leave Jackson HMA**, Relator Vanderlan reported individual occurrences of EMTALA violations, as well as failures in the emergency room at CMMC, e.g., failure of staff physicians to appear and treat, failure to stabilize patients, the transfer of unstabilized patients after staff physicians failed to appear and treat, to Jackson HMA staff in the chain of command, his physician peers, supervisor personnel in both the nursing field and administrative field at CMMC and the governing body in the State of Mississippi. This included Charlotte Dupre, the CEO of Jackson HMA at the time. . ..
>
> 83.    In each of these meetings and at every opportunity Relator Vanderlan stressed to Jackson HMA the consequences of emergency department physicians at a Level III trauma facility not presenting to treat and/or transferring unstabilized African American government insured patients. In each of these meetings and at every opportunity Relator Vanderlan emphasized that: a) Jackson HMA was subjecting itself to fines and penalties from the federal government for violating EMTALA; b) **Jackson HMA was risking termination from the Medicare program**; c) Jackson HMA was risking fines and penalties for violating State Trauma fund guidelines; and, d) Jackson HMA was risking exposure of its payment arraignment with Dr. Rooks, i.e. Dr. Rooks was being paid for treating patients even when he refused to present because the patients were African American and/or government insured/uninsured.
>
> . . . .

> 138. As a direct response to Relator Vanderlan's investigation and reporting of errors, omissions, shortcomings, and fraudulent activities as stated herein, Jackson HMA engaged in a threatening campaign of harassment and intimidation directed at Relator Vanderlan and designed to discourage and prevent him from investigating and asserting **FCA fraud claims**, EMTALA claims, and/or what he reasonably believed to be **FCA fraud claims** and/or EMTALA claims.
>
> 139. At all times described herein, Jackson HMA was aware that Relator Vanderlan was engaged in the investigation of **acts of fraud against the Government** and/or what he reasonably believed to be **acts of fraud against the Government** committed by CMMC ED staff . . . .

Proposed Am. Compl. [6-1] (emphasis added).

Jackson HMA says these averments "allege only that [Vanderlan] raised EMTALA violations, not that he alleged any fraud against the government." Def.'s Mem. [14] at 9. But viewed in the light most favorable to Vanderlan, they plausibly plead that he engaged in protected activity, that Jackson HMA knew it, and that he later suffered an adverse employment action. The proposed amendment is not futile. Nor is it prejudicial (this claim was asserted from the beginning). Vanderlan is entitled to discovery before the Court further considers the merits.

IV.   Additional Motions

Jackson HMA moved to strike Vanderlan's declaration, which he attached to his response to the motion to dismiss. Because the Court disregarded the declaration, the motion to strike [9] is granted. Vanderlan's motion to convert [11] the motion to dismiss to a motion for summary judgment and allow discovery is denied as moot. Finally, his motion to amend [6] as to Count V is denied as moot because that claim remained in the original case after severance.

V.   Conclusion

The Court has considered the parties' arguments; those not addressed would not have changed the result. Defendant's motion to dismiss [3] is denied; Plaintiff's motion to amend the

10

complaint as to Count IV [6] is granted; Defendant's motion to strike [9] Plaintiff's declaration is granted, and Plaintiff's motion to convert [11] is denied.

Plaintiff must file an amended complaint as to Count IV within 7 days of this Order. The claim asserted in Count V of the proposed amended complaint should be treated like the other severed claims, noting that it has been removed consistent with Court order. *See* Proposed Am. Compl. [6-1] at 37. The parties must contact United States Magistrate Judge F. Keith Ball to set the case for a case-management conference. Judge Ball may lift the stay following that conference.

**SO ORDERED AND ADJUDGED** this the 16th day of May, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE