UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

W. BLAKE VANDERLAN, M.D.                                                                      PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:23-CV-258-DPJ-FKB

JACKSON HMA, LLC D/B/A CENTRAL                                                   DEFENDANT
MISSISSIPPI MEDICAL CENTER
A/K/A MERIT HEALTH CENTRAL – JACKSON

ORDER

Defendant Jackson HMA, LLC, asks the Court to dismiss Plaintiff W. Blake Vanderlan's retaliation claim brought under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.  Mot. [27].  After briefing, the sole remaining question is whether Vanderlan was a hospital employee; if not, then he would fall beyond EMTALA's whistleblower provisions.  Because the Court finds that Vanderlan states a plausible claim to employee status, it denies Jackson HMA's motion without prejudice as to that claim.  But the motion is granted to the extent Vanderlan may have pleaded an EMTALA retaliation claim based on a refusal to refer patients.

I.      Facts and Procedural History

Vanderlan's professional relationship with Jackson HMA—which owned and operated the Central Mississippi Medical Center (CMMC)—began on April 1, 2013, when he entered into a Physician Recruitment Agreement with Jackson HMA and JMS Burn Center.  Under that agreement, Jackson HMA "agreed to provide [Vanderlan] certain financial recruitment benefits," while Vanderlan agreed "to practice [his] Specialty Full-Time . . . in [Jackson HMA's] Geographic Service Area . . . and to become a member of [its] medical staff."  Agreement [27-1] at 1.  The agreement stated:  "You aren't our employee."  *Id.* at 4.

According to Vanderlan, "[s]hortly after [he] join[ed] CMMC, [he] uncovered numerous ongoing and systematic [EMTALA] compliance violations." Am. Compl. [20] ¶ 57. So "[i]n late May/early June 2013, [he] met with members of the CMMC administrative staff and presented his concerns . . . . After the meeting, [he] was asked to be Trauma Director at CMMC." *Id.* ¶ 59. "As Trauma Director, Dr. Vanderlan discovered and continued to report additional EMTALA violations to the same CMMC administrative staff." *Id.* ¶ 60.

After that, "members of the CMMC staff made it clear to Dr. Vanderlan that his insistence on reporting violations was making it difficult for them to allow him to engage in all medical practices to which he was entitled by contract and authorized by his professional certifications." *Id.* ¶ 65. Eventually, Vanderlan "realized that further efforts to change the culture at CMMC would be futile," so on December 20, 2013, "Vanderlan was forced to resign his clinical privileges at CMMC." *Id.* ¶ 69.

Following his resignation, Vanderlan informed federal investigators that Jackson HMA was violating EMTALA. And in May 2015, the Department of Health and Human Services' Centers for Medicare and Medicaid Services (CMS) issued a letter advising Jackson HMA that its Medicare provider agreement would terminate on June 5, 2015, unless it produced evidence that its deficiencies had been corrected. CMS sent a copy of that letter to Vanderlan, and on October 23, 2015, Vanderlan filed a False Claims Act case against Jackson HMA. *See United States ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15-CV-767-DPJ-FKB.

That case raised qui tam claims in the name of the United States of America and the State of Mississippi as well as a personal claim of retaliatory harassment/discharge under the False Claims Act. In April 2023, the Court separated that case into two civil actions: the original case would continue as to the qui tam claims, and this case was opened as a new civil action in which

2

Vanderlan could pursue his employment claims.  The next month, the Court granted Vanderlan's motion to amend this Complaint to add an EMTALA retaliation claim.  That claim is the focus of Jackson HMA's present motion to dismiss.

II.     Standard

Jackson HMA seeks dismissal of the EMTALA retaliation claim under Federal Rule of Civil Procedure 12(b)(6).  In considering a motion under that rule, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

III.    Analysis

EMTALA "was enacted to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay." *Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998).  "Congress included a whistleblower provision in EMTALA to maximize the likelihood that violations would be reported, and that employees who report them would not be punished by the employer hospital." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 589 (3d Cir. 2018).  That provision states:

> A participating hospital may not penalize or take adverse action against a qualified medical person described in subsection (c)(1)(A)(iii) or a physician because the person or physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized or against any *hospital employee* because the employee reports a violation of a requirement of this section.

42 U.S.C. § 1395dd(i) (emphasis added).

The section therefore covers two categories:  (1) physicians who refuse to authorize transfers and (2) hospital employees who report violations.  *Id.*  It's unclear whether Vanderlan intended to plead a claim under the physician-referral provision, and he never responded when Jackson HMA moved to dismiss it.  Defendant's motion is therefore granted as to any claim under § 1395dd(i)'s physician-referral provision.

Vanderlan does pursue the hospital-employee provision, claiming that Jackson HMA penalized him for reporting EMTALA violations.  But Jackson HMA argues that Vanderlan was never a "hospital employee" because the Physician Recruitment Agreement states, "You aren't our employee."  Agreement [27-1] at 4.  Jackson HMA also asserts that Vanderlan himself alleged only that he was a staff physician "with full general surgical privileges, critical care privileges[,] and emergency medical privileges."  Am. Compl. [20] ¶ 20.  In other words, Jackson HMA says Vanderlan didn't allege employee status as § 1395dd(i) requires.

EMTALA defines neither "employee" nor "hospital employee," and the Court found no binding authority—or even persuasive circuit authority—construing those terms under §1395dd(i). Vanderlin does, however, cite two district-court cases holding that physicians are hospital employees under EMTALA. *See Muzaffar v. Aurora Health Care S. Lakes, Inc.*, 985 F. Supp. 2d 875 (E.D. Wisc. 2013); *Zawislak v. Mem'l Hermann Hosp. Sys.*, No. 11-1335, 2011 WL 5082422 (S.D. Tex. Oct. 26, 2011). Those cases concluded that this is one of those "rare cases where application of the literal terms of the statute will produce a result that is 'demonstrably at odds with the intentions of its drafters'" and that "those intentions must be controlling." *Zawislak*, 2011 WL 5082422, at *4 (quoting *Miller v. Med. Ctr. of Sw. La.*, 22 F.3d 626, 629 n.6 (5th Cir. 1994) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982))).

Jackson HMA says the Court should reject *Zawislak* and *Muzaffar* and avoid rewriting the plain text. It also notes that "the plain meaning of [the] term 'employee,' where Congress fails to elaborate, is 'the conventional master-servant relationship as understood by common-law agency doctrine.'" Def.'s Mem. [28] at 5 n.2 (quoting *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013)). True enough, the Supreme Court has a

> "well-established" principle that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms . . . . In the past, when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine."

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989)).

5

The Supreme Court and the Fifth Circuit have applied that reasoning in many contexts involving employee status. For example, *Darden* construed the term "employee" when considering an employee-benefits claim under the Employee Retirement Income Security Act of 1974. 503 U.S. at 321; *see also Reid*, 490 U.S. at 741–42 (applying common law of agency to definition of "employee" under Copyright Act of 1976); *Kelley v. S. Pac. Co.*, 419 U.S. 318, 319 (1974) (same for personal-injury claim under Federal Employers' Liability Act).[1]

Within the Fifth Circuit, *Junio* followed *Darden* when construing "employee" for a Title VII retaliation claim. 717 F.3d 434. And *United States ex rel. Bias v. Tangipahoa Parish School Board* looked to "common-law agency doctrine" in an even closer fit when it defined "employee" under the False Claims Act's retaliation provision. 816 F.3d 315, 325 (5th Cir. 2016).

Neither party examines the common-law agency doctrine in detail, but when the Fifth Circuit turns to it, the court "appl[ies] the 'economic realities/common law control test,' a variation of the common law agency test, in determining whether a party is an employee." *Juino*, 717 F.3d at 434 (quoting *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988)).

> The economic-realities portion of the test asks whether putative employees, "as a matter of economic reality, are dependent upon the business to which they render service." [*Diggs*, 847 F.2d] at 282 n.3 (citation omitted). The common law control portion of the test, which courts should emphasize over the economic realities portion, assesses "the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be

---

[1] In *Clackamas Gastroenterology Associates, P.C. v. Wells*, the Court noted that the *Darden* factors were not "directly applicable" when determining whether physician shareholders were "employees" under the Americans with Disabilities Act because there was no need to distinguish between employees and independent contractors in *Clackamas*. 538 U.S. 440, 445 n.5 (2003). Still, the Court looked to the "common law's definition of the master-servant relationship," focusing on "the master's control over the servant." *Id.* at 448.

6

>performed." *Id.* at 272 (citing *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985)).

*Id.*

Under this test, the Fifth Circuit has concluded—in Title VII cases—that physicians with staff privileges were not employees of hospital defendants.  For example, Jackson HMA relies on *Perry v. VHS San Antonio Partners, LLC*, when the court held that a pediatric intensivist with staff privileges was not the defendant hospital's employee.  990 F.3d 918, 931 (5th Cir. 2021). The Fifth Circuit noted that "[c]ases from other circuits have reached the same general conclusion:  A physician with hospital privileges is not a hospital employee for purposes of federal antidiscrimination law."  *Id.* at 929 n.5 (collecting cases); *see also Diggs*, 847 F.2d at 272 (concluding that obstetrician-gynecologist with staff privileges at hospital failed to establish she was a hospital employee).

Assuming this test applies, the Court finds that Vanderlan's claim survives at the Rule 12(b)(6) stage.  *Perry* and cases like it have been decided under Rule 56.  990 F.3d at 922.  And the Fifth Circuit has otherwise noted that "[t]he 'hybrid economic realities/common law control test' is necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship."  *Muhammed v. Dall. Cnty. Cmty. Supervision and Corr. Dept.*, 479 F.3d 377, 382 (5th Cir. 2007) (footnote omitted); *see id.* at 383 (reversing dismissal of Title VII claims "and remand[ing] so the district court can make further factual findings about the nature and circumstances of Muhammad's position as a probation officer and consider whether [the defendant] was his employer for Title VII purposes").

So the question is whether Vanderlan has pleaded facts that state a plausible claim to employee status.  Jackson HMA says he fails and highlights the Physician Recruitment

Agreement that said he wasn't its employee.  *See* Def.'s Mem. [28] at 6 (citing Agreement [27-2] at 4).  But there are other facts to consider.  For instance, Vanderlan signed that Agreement before accepting the Trauma Director position.  And he says Jackson HMA breached the agreement after he accepted the new position by changing his duties and privileges.  Am. Compl. ¶¶ 20, 59, 62, 67, 85.  That may suggest control, as could his assertion that staff informed him that his protected conduct "was making it difficult for them *to allow him* to engage in all medical practices to which he was entitled by contract and authorized by his professional certifications." *Id.* ¶ 65 (emphasis added).

These pleaded facts are similar to those in *Nulph v. Houston Healthcare System, Inc.*, where the district court denied a motion to dismiss a doctor's EMTALA retaliation claim.  No. 5:21-CV-423, 2022 WL 1308824, at *3 (M.D. Ga. May 2, 2022).  As in this case, the defendant claimed that the doctor was not a hospital employee, but the district court found that "two alleged facts significantly undermine the contention that Nulph was not an employee for the purposes of EMTALA:  (1) Nulph was the director of HHC's emergency department, and (2) Nulph claims that he was removed from his position at the direction of HHC's president."  *Id.*

Perhaps Vanderlan could have said more in his Amended Complaint.  But, at this stage, the Court must view the well-pleaded facts in the light most favorable to him without weighing evidence.  *See Martin K. Eby Constr. Co.*, 369 F.3d at 467.  And Rule 12(b)(6) "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting

8

*Twombly*, 550 U.S. at 556). Because Vanderlan has plausibly pleaded employee status, Defendant's motion is denied as to this claim.[2]

Finally, the Court realizes that this issue could resurface quickly. Vanderlan has now moved for partial summary judgment on a legal issue related to his EMTALA retaliation claim. *See* Pl.'s Mot. [89]. In his supporting brief, Vanderlan avoided the employee-status question, so perhaps Jackson HMA will revisit it based on the discovery record. In any event, this holding is limited to the Rule 12(b)(6) stage.

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Jackson HMA's motion to dismiss [27] is granted with respect to any physician-retaliation claims Vanderlan may have pleaded but is denied as to the hospital-employee-retaliation claim.

**SO ORDERED AND ADJUDGED** this the 9th day of February, 2024.

> s/ *Daniel P. Jordan III*
> CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Court notes the *Muzaffar* analysis explaining why holdings regarding employee status under Title VII might not apply under EMTALA. 985 F. Supp. 2d at 878–79. But given this Court's holding that Jackson HMA's motion should be denied under the agency test it cited, there is no present need not decide whether to follow *Muzaffar* and *Zawislak*. The parties may revisit the issue at the summary-judgment stage.