UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

W. BLAKE VANDERLAN, M.D.                                                              PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:23-CV-258-DPJ-FKB

JACKSON HMA, LLC D/B/A CENTRAL                                                        DEFENDANT
MISSISSIPPI MEDICAL CENTER A/K/A
MERIT HEALTH CENTRAL – JACKSON

ORDER

This False Claims Act (FCA) and Emergency Medical Treatment and Labor Act (EMTALA) retaliation case is before the Court on three discovery motions: Defendant Jackson HMA, LLC, has moved for a protective order [44], and Plaintiff W. Blake Vanderlan has filed two motions to compel [46, 53]. As explained below, the motion for protective order and first motion to compel are both granted in part and denied in part, and the second motion to compel is denied.

I.     Factual Background

In 2013, Vanderlan worked as a physician with staff privileges at Central Mississippi Medical Center (CMMC), which Jackson HMA owned and operated. Vanderlan says he noted and complained of "numerous ongoing and systematic [EMTALA] compliance violations" at CMMC. Am. Compl. [20] ¶ 57. He claims Jackson HMA retaliated against him for reporting EMTALA violations by forcing him to resign his privileges at CMMC.

After he resigned, Vanderlan "began providing patient files, documents, and records, along with interviews, to investigators at the Office of the Inspector General ('OIG') and the Department of Health and Human Services ('HHS') Center for Medicare Services ('CMS')." *Id.* ¶ 74. Vanderlan's reporting of Jackson HMA's alleged noncompliance with EMTALA led to

CMS sending CMMC a May 13, 2015 letter accusing CMMC of "violat[ing] the requirements of 42 CFR 489.24"—the EMTALA regulation—and threatening to terminate CMMC's Medicare provider agreement effective June 5, 2015, unless it produced evidence that the deficiencies had been corrected.  Letter [46-3] at 1.

Vanderlan later filed an FCA case against Jackson HMA.  *See United States, ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15-CV-767-DPJ-FKB.  That case raised *qui tam* claims in the name of the United States of America and the State of Mississippi, as well as a personal claim of retaliatory harassment/discharge under the FCA.  In April 2023, the Court separated that initial case into two separate civil actions:  the original case would continue as to the *qui tam* claims, and this case was opened as a new civil action in which Vanderlan's personal retaliation claim would be litigated.  The next month, the Court granted Vanderlan's motion to amend the Complaint here to add a claim for retaliation under EMTALA.

II.      Standards

Federal Rule of Civil Procedure 26 allows for broad discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Where a discovery dispute arises, the burden is "on the party resisting discovery to—in order to prevail on a motion for protective order or successfully resist a motion to compel—specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of proper discovery . . . or that a discovery request would impose an undue burden or expense or is otherwise objectionable."  *Carr v. State farm Mut. Auto. Ins. Co.*, 312

2

F.R.D. 459, 469 (N.D. Tex. Dec. 7, 2015) (citing *McLeod, Alexander, Powell & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

III.   Analysis

    A.   Jackson HMA's Motion for Protective Order [45] and Vanderlan's First Motion to Compel [46]

Vanderlan asks the Court to compel Jackson HMA to produce documents responsive to several of his discovery requests, and Jackson HMA seeks a protective order limiting the scope of documents it must produce. The parties' dispute centers on whether, to establish his EMTALA retaliation claim, Vanderlan must prove "actual violations" of EMTALA. Pl.'s Resp. [47] at 4. Vanderlan says he must, so he seeks production of information he believes is relevant to establishing those underlying violations. Jackson HMA, on the other hand, argues that Vanderlan need only prove he had a reasonable, good-faith belief EMTALA had been violated.

The Court starts with the statutory language. The whistleblower provision of EMTALA Vanderlan invokes states: "A participating hospital may not penalize or take adverse action . . . against any hospital employee because the employee reports *a violation of a requirement of this section*." 42 U.S.C. § 1395dd(i) (emphasis added). This language is similar to that used in Title VII's anti-retaliation provision: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed *any practice made an unlawful employment practice by this subchapter*." *Id.* § 2000e-3(a) (emphasis added). In *Payne v. McLemore's Wholesale & Retail Stores*, the Fifth Circuit considered whether a plaintiff alleging retaliation under Title VII should be "required to prove the actual existence of . . . unlawful employment practices." 654 F.2d 1130, 1137 (5th Cir. 1981). The court quoted a district court decision relied upon by the Ninth Circuit that observed "appropriate informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the

3

event the alleged wrongdoing does not exist." *Id.* at 1138 (quoting *Hearth v. Metro. Transit Comm'n*, 436 F. Supp. 685, 688 (D. Minn. 1977) (quoted in *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978))). The Fifth Circuit agreed with this sentiment, concluding:

> To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of [§ 2000e-3(a)] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices.

*Id.* at 1140.

The Third Circuit has extended this logic to EMTALA retaliation claims. *See Gillispie v. RegionalCare Hosp. Partners Inc*, 892 F.3d 585, 593 (3d Cir. 2018) ("As with Title VII claims, Gillispie need not prove an actual EMTALA violation. Rather, she need only establish that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996))); *accord Farris v. Labette Cnty. Med. Ctr.*, No. 2:19-CV-2060, 2021 WL 6049831, at *3 (D. Kan. Dec. 21, 2021) ("The plaintiff does not need to prove an actual EMTALA violation, but he must prove that he was acting under a good-faith belief that a violation existed." (citing *Gillispie*, 892 F.3d at 593)).

Vanderlan says the Tenth Circuit has gone the other way, citing *Genova v. Banner Health*, 734 F.3d 1095 (2013) (Gorsuch, J.). But the *Genova* court did not address whether an EMTALA-retaliation plaintiff must establish an actual EMTALA violation or can succeed based on a good-faith belief that such a violation had occurred. Indeed, the *Genova* plaintiff would have failed under either test: "His complaint wasn't about an EMTALA violation but more nearly its inverse." 734 F.3d at 1098. The Tenth Circuit recognized that the plaintiff's actual complaint—that the hospital was hoarding patients—could eventually lead to patient dumping, which EMTALA prohibits. But it reasoned that even if the plaintiff "thought he was witnessing[] a moment when his hospital was about to reach the tipping point," the EMTALA

4

retaliation provision did not protect his complaints about "an *impending*" EMTALA violation. *Id.* at 1098, 1099.

Stated simply, *Genova* did not address the legal issue here. Absent some authority from Vanderlan suggesting that the Court should deviate from the approach the Fifth Circuit takes in Title VII cases, the Court concludes that Vanderlan need not prove that Jackson HMA violated EMTALA to succeed on his EMTALA retaliation claim. He need show only that he had "a reasonable belief that the employer" violated EMTALA. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). That said, Vanderlan is entitled to discovery related to alleged EMTALA violations during his tenure as such evidence would be relevant to whether he reasonably believed that Jackson HMA violated EMTALA.

With that legal background in mind, the Court turns to the requests for production and objections.

**Reserved Objections.** Vanderlan objects to Jackson HMA's attempt to reserve objections beyond those it asserted in its discovery responses pending resolution of its motion for protective order. But because the Court here rules only on the scope-of-discovery objection Jackson HMA incorporated into each of its discovery responses, the issue of any reserved objections is not presently before it.

**Vanderlan's Objection to Jackson HMA's "Document Dump."** Vanderlan complains that, as to 17,888 pages of documents Jackson HMA produced, they are not organized and labeled as responsive to particular discovery requests. Maybe so, but Jackson HMA is correct that Vanderlan did not attempt to resolve the issue informally or set a discovery conference as to this issue, as required by Section 6.F.4 of the Case Management Order (CMO). *See* CMO [34] at 3. The parties should be able to work this issue out: Jackson HMA says it merely produced

documents that had been previously produced by each party in the related state-court litigation. If the parties can't work it out, the parties should contact the Court to set a telephonic discovery conference.

That leaves Vanderlan's individual requests for production. According to Vanderlan, the disputed requests are Request Nos. 1 through 7, 10, 11, and 16. The Court will address them in turn.

***Request No. 1.***  Vanderlan seeks production of

> all correspondence between you and any federal or state agency (OIG, CMS, HHS, DOJ, AG, Medicare, Medicaid, State Trauma Fund, etc.) involving those matters (failures, deficiencies, threats to patient health and safety, Medicare provider agreement termination, future compliance, evidence of correction, etc.) identified in The Notification Letter and/or identified in any additional similar letters/contacts subsequent thereto.[1]

Jackson HMA's Resps. to Pl.'s Reqs. for Produc. of Docs. [46-2] at 4. This request is overbroad as it relates to Vanderlan's EMTALA retaliation claim. The motion for protective order and motion to compel are both granted in part and denied in part. Jackson HMA shall produce responsive documents related to any alleged EMTALA violations that occurred between April 1 and December 30, 2013.

***Request No. 2.***  Vanderlan seeks production of "a copy of your Plan of Correction submitted as part of your written response to The Notification Letter and/or identified in any additional similar letters/contacts subsequent thereto." *Id.* at 5. What Jackson HMA did to correct any EMTALA violations more than a year after Vanderlan's employment ended bears no relevance to his EMTALA retaliation claim. The motion for protective order is granted and the motion to compel is denied as to this request.

---

[1] Vanderlan refers to the May 13, 2015 CMS Letter as The Notification Letter.

6

***Request No. 3.*** Vanderlan asks for copies of "all additional documents, e.g., emails, memoranda, draft Plans, assessments, investigations, reports, meeting minutes, etc., relating to corrective actions taken by you in response to The Notification Letter and/or identified in any additional similar letters/contacts subsequent thereto." *Id.* As with Request No. 2, the documents sought in Request No. 3 are irrelevant to Vanderlan's claims. The motion for protective order is granted and the motion to compel is denied as to this request.

***Request No. 4.*** Vanderlan seeks copies of

> all documents relating to your compliance response to The Notification Letter, including but not limited to all documents relating to: the alleged corrective action taken to remove the identified deficient practice(s); changes made to insure the alleged deficient practice(s) did not recur; and, monitoring of the corrective action to insure the identified deficient practice(s) would not recur.

*Id.* at 6. This request is similar to Request Nos. 2 and 3 and does not seek evidence relevant to Vanderlan's claims. The motion for protective order is granted and the motion to compel is denied as to this request.

***Request No. 5.*** Vanderlan asks for copies of "all patient files that were involved in any investigation by a state or federal agency arising from those matters (See, No. 1 above) identified in The Notification Letter." *Id.* This request is like Request No. 1; the contents of the files of patients who had encounters at CMMC during Vanderlan's tenure could be relevant to his EMTALA retaliation claim. Jackson HMA says that "patients of which Vanderlan was not aware cannot be relevant to whether he had a good faith, reasonable belief of an EMTALA violation at the time he allegedly reported a violation." Def.'s Reply [56] at 5. Jackson HMA is probably right, and Vanderlan will ultimately bear the burden to prove that he complained of specific conduct that he reasonably believed constituted an EMTALA violation; he obviously could not have complained about incidents of which he wasn't aware. But at this stage, the motion for protective order and motion to compel are both granted in part and denied in part.

7

Jackson HMA shall produce responsive documents for patients seen at CMMC between April 1 and December 30, 2013.

*Request No. 6.* Vanderlan seeks production of "all documents relating to any further surveys and/or reviews conducted by any federal or state agency(s) subsequent to your receipt of The Notification Letter and/or identified in any additional similar letters/contacts subsequent thereto." Jackson HMA's Resps. to Pl.'s Reqs. for Produc. of Docs. [46-2] at 7. This request is similar to Request Nos. 1 and 5. The motion for protective order and motion to compel are both granted in part and denied in part. Jackson HMA shall produce responsive documents, if any, related to patients seen at CMMC between April 1 and December 30, 2013.

*Request No. 7.* Vanderlan seeks production of "all documents relating to settlement negotiations between you and/or any other federal or state agency relating to the failures and deficiencies identified in The Notification Letter and/or identified in any additional similar letters/contacts subsequent thereto." *Id.* Vanderlan has not explained how settlement discussions between Jackson HMA and any government entities are relevant to his EMTALA-retaliation claim. Jackson HMA's motion for protective order is granted and Vanderlan's motion to compel is denied as to this request.

*Request No. 10.* Vanderlan wants Jackson HMA to "produce a copy of all documents relating to the payment of actual or threatened assessment of fines, penalties, and/or reimbursements against and/or by you as a consequence of the failures and deficiencies identified in The Notification Letter and/or identified in any additional similar letters/contacts subsequent thereto." *Id.* at 9. As with Request No. 7, Vanderlan has not shown how information related to fines or penalties Jackson HMA paid after he left CMMC is relevant to his claim that

8

Jackson HMA retaliated against him for reporting EMTALA violations. Jackson HMA's motion for protective order is granted and Vanderlan's motion to compel is denied as to this request.

***Request No. 11.*** Vanderlan seeks copies "of all documents relating to payments made to you and/or the assessment of fines, penalties, and/or reimbursements by or to the State Trauma Fund from 2015 to date." *Id.* For the same reasons addressed above in relation to Request Nos. 7 and 10, the documents sought in this request are not discoverable in this case. Jackson HMA's motion for protective order is granted and Vanderlan's motion to compel is denied as to this request.

***Request No. 16.*** Finally, Vanderlan asks the Court to compel production of copies of

> all documents relating to the following matters identified in the September 27, 2018 Jack Seldon Letter to Lynn Murray, AUSA (the "Selden Letter"):
>
> a. The disruption of efforts between OIG and Jackson HMA to address underlying issues;
>
> b. OIG investigation into EMTALA violations by Jackson HMA;
>
> c. Discussions between Jackson HMA and OIG in an effort to reach a resolution;
>
> d. Discussions between Jackson HMA and OIG over the alleged EMTALA violations that are the subject of Vanderlan's lawsuit;
>
> e. Jackson HMA's concerns about settling with OIG while Vanderlan's motion to enjoin settlement was pending;
>
> f. The basis of Jackson HMA's disagreements with OIG about the underlying EMTALA issues;
>
> g. Factors supporting dismissal of Vanderlan's case;
>
> h. Jackson HMA and OIG's disagreements about the underlying EMTALA issues; and
>
> i. All discussions between Jackson HMA and OIG subsequent to the Selden Letter.

*Id.* at 12.  This request references a letter Jackson HMA's counsel sent the U.S. Attorney's Office in September 2018 regarding Vanderlan's *qui tam* FCA case and whether the Government should move to dismiss that case.  Letter [46-5].  As with the preceding requests, this request does not seek information relevant to Vanderlan's EMTALA-retaliation claim.  Jackson HMA's motion for protective order is granted and Vanderlan's motion to compel is denied as to this request.

      B.      Vanderlan's Second Motion to Compel [53]

Vanderlan asks the Court to compel Jackson HMA to respond to his punitive-damages discovery requests.[2]  The parties agree that if Vanderlan is entitled to punitive damages on his

---

[2] The following requests for production are at issue:

Request No. 13:  Please produce a copy of your financial statements (audited and/or unaudited) with accountant opinion letters and notes to the financial statements for the years 2022 to the present.

Request No. 14:  Please produce a copy of your internal financial statements for the years ended 2022 to the present.

Request No. 15:  Please produce a copy of your internal financial statements for Mississippi operations for the years 2022 to the present.

Request No. 16:  Please produce your Federal and State income tax returns for the years 2021 to the present.

Request No. 17:  Please produce your most recent real estate appraisal for all property owned by you.

Request No. 18:  Please produce your most recent equipment, machinery and other fixed asset appraisals for equipment, machinery and other fixed assets owned by you.

Request No. 19:  Please produce the most recent business evaluations of you prepared by outside valuators and/or company personnel.

Request No. 20:  Please produce all property and casualty insurance policies for the appraised value of real estate, buildings, equipment, machinery and other fixed assets owned by you.

EMTALA-retaliation claim, "Mississippi Code [section] 11-1-65 would control." Def.'s Mem. [70] at 5. If Vanderlan succeeds on his EMTALA-retaliation claim and the Court decides that punitive damages both are available under EMTALA and should be submitted to the jury, then and only then may Jackson HMA's net worth and financial condition become relevant. Miss. Code Ann. § 11-1-65(1)(e) ("In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, *to the extent relevant*, . . . the defendant's financial condition and net worth . . . ." (emphasis added)).

This Court "typically do[es] not permit pre-trial discovery to establish a party's net worth for punitive damages purposes." *Rush v. STIHL, Inc.*, No. 3:17-CV-915-DPJ-FKB, 2019 WL 11254769, at *1 (S.D. Miss. Jan. 31, 2019) (collecting cases). As the Court explained in *Francois v. Colonial Freight System, Inc.*,

> Fair and reasonable parameters of discovery on the issue of the net worth of a defendant is a difficult issue for a court. Certainly, where punitive damages are appropriate, the wealth of a defendant is a legitimate element of inquiry and proof. A plaintiff should be allowed an adequate opportunity to prove a legitimate punitive damage claim. On the other side of the balance, by simply inserting a claim for punitive damages in a pleading, a plaintiff should not be able to have carte blanche access to the private financial life of a defendant. A reasonable balance is struck by requiring the defendant to bring to trial a sworn financial statement, fairly outlining, under the penalty of perjury, the defendant's assets, liabilities, and net worth. . . . [That] financial statement sh[ould] be held and maintained as private by the [d]efendant and the [d]efendant's attorney until

---

Request No. 21: Please produce the most recent depreciation schedule of your company.

Request No. 22: Please produce all documents relating to applications by you for a Certificate of Need to the Mississippi State Department of Health from 2022 until the present.

Request No. 23: Please produce all documents prepared by you and relating to any proposals to sell your company from 2022 until the present.

Request No. 24: Please produce a copy of all documents provided to you and relating to any proposals to buy your company from 2022 until the present.

11

>such time as the court rules that punitive damages are an appropriate subject for the jury's consideration.

No. 3:06-CV-434-WHB-LRA, 2007 WL 679998, at *4 (S.D. Miss. Mar. 2, 2007).[3]

Vanderlan objects to this solution, arguing that net worth and financial condition are two separate things, with the latter including Jackson HMA's "1) ability to raise funds; 2) revenue stream; 3) asset management; 4) capital structure; 5) payout of returns, etc."[4] Pl.'s Rebuttal [72] at 2. And he urges the Court to apply "a balancing approach . . . regarding net worth discovery" developed by United States Magistrate Judge Anderson in *Regions Insurance, Inc. v. Alliant Insurance Services, Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852 (S.D. Miss. Apr. 24, 2015). That test attempts to "balance[e] the needs of a plaintiff to prove their entitlement to punitive damages versus the consideration of the sensitive and proprietary nature of a defendant's financial information," and requires consideration of certain factors: (1) the strength of the claim for punitive damages; (2) whether the company is public or private; (3) the burden and expense of the discovery; (4) whether the defendant files a dispositive motion regarding punitive damages; (5) whether the district judge will delay the trial on punitive damages for a period of time following a compensatory-damages verdict; (6) whether a protective order will allay the defendant's privacy concerns; (7) whether the defendant attests to its ability to produce a current certified net worth statement within a short period of time; and (8) the relationship between the parties. 2015 WL 1886852, at *6–7.[5]

---

[3] Jackson HMA has already agreed that "[i]n the event that . . . Vanderlan establishes liability at trial and the Court determines it is proper to consider punitive damages, Jackson HMA [will] provide a then-current statement of its net worth, certified by independent auditors." Letter [69-5] at 2.

[4] Mississippi's punitive-damages statute does not define "financial condition."

12

Jackson HMA says, even applying this test, Vanderlan fails to establish the need for "net worth discovery during the initial discovery period." *Id.* at \*6.  On the first factor, "the Court require[s] that plaintiff set forth in particularity the facts it contends establish a basis for punitive damages." *Id.*; *accord id.* ("No discovery (during the normal discovery period) will be allowed when there is utterly no factual basis for punitive damages or the claim is clearly frivolous."). Vanderlan says the fact that he was allegedly constructively discharged "due to his reporting of and/or refusal to participate in CMMC's practice of violating EMTALA" demonstrates the strength of his punitive-damages claim.  Pl.'s Mot. [53] at 10.  In reply, he points to paragraphs 136 through 142 of his Amended Complaint as containing the factual basis for his punitive-damages claim.  The only factual allegation in those paragraphs is the conclusory one that "Jackson HMA engaged in a threatening campaign of harassment and intimidation directed at Dr. Vanderlan and designed to discourage and prevent him from investigating and asserting FCA fraud claims, EMTALA claims, and/or what he reasonably believed to be FCA fraud claims and/or EMTALA claims."  Am. Compl. [20] ¶ 138.  The Court finds this factor to be neutral.

As to the remaining factors, Judge Anderson in *Regions* noted that "[t]he concerns for the privacy of a publicly held company are not as significant, as the information requested is normally available.  Therefore, a public company should produce, if requested, at least a certified statement of its net worth during discovery and supporting documentation." *Regions*, 2015 WL 1886852, at \*6.  Jackson HMA is a private company, so it has an interest in keeping information about its net worth private.

---

[5] In *Dear v. Crown Castle South, LLC*, Judge Barbour concluded that *Regions* "does not constitute controlling law that th[e] Court is obligated to follow."  No. 3:13-CV-212-WHB-RHW, 2016 WL 7985436, at \*7 (S.D. Miss. June 9, 2016).

13

As to the burden and expense of discovery, Vanderlan says a hospital's owner must submit "proof of financial ability for continuous operation[]" to the Mississippi State Department of Health. Pl.'s Mot. [53] at 10 (quoting 15-16-1 Miss. Code R. § 41.4.1(3)). But that proof is submitted in an "[i]nitial [a]pplication for [h]opsital [l]icense"; annual applications for the renewal of a hospital license need not include the financial information. 15-16-1 Miss. Code R. §§ 41.4.1, 41.4.2. Vanderlan has not shown that the burden and expense of the discovery he has requested would be minimal.

The fourth through sixth and eighth factors are all essentially neutral, and Jackson HMA has shown that it can and will produce a certified statement of its net worth at the time a liability verdict favorable to Vanderlan is entered. So even applying the *Regions* test, Vanderlan has not shown he has a right to net-worth discovery at this stage. Instead, the Court will require Jackson HMA

> to bring to trial a sworn financial statement, fairly outlining, under the penalty of perjury, the defendant's assets, liabilities, and net worth. [That] financial statement sh[ould] be held and maintained as private by the [d]efendant and the [d]efendant's attorney until such time as the court rules that punitive damages are an appropriate subject for the jury's consideration.

*Francois*, 2007 WL 679998, at *4. Vanderlan's second motion to compel [53] is denied.

C.   Jackson HMA's Requests for Attorneys' Fees and Expenses

Jackson HMA requests its fees and expenses incurred in responding to Vanderlan's motions to compel. These requests are denied.

IV.     Conclusion

As set forth above, Jackson HMA's motion for protective order [44] and Vanderlan's first motion to compel [46] are granted in part and denied in part.  By March 22, 2024, Jackson HMA must produce the above-described documents responsive to Request Nos. 1, 5, and 6 and supplement its responses to those requests, stating that those documents have been produced as required by this Order.  Vanderlan's second motion to compel [53] is denied.

SO ORDERED, this the 27th day of February, 2024.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE