UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

W. BLAKE VANDERLAN, M.D.                                        PLAINTIFF

V.                                        CIVIL ACTION NO. 3:23-CV-258-DPJ-ASH

JACKSON HMA, LLC D/B/A CENTRAL                                 DEFENDANT
MISSISSIPPI MEDICAL CENTER A/K/A
MERIT HEALTH CENTRAL – JACKSON

ORDER

This False Claims Act (FCA) and Emergency Medical Treatment and Labor Act

(EMTALA) retaliation case is before the Court on three discovery motions. Plaintiff W. Blake

Vanderlan, M.D., filed his Second Motion to Compel Defendant Jackson HMA to Respond to

Disclosures and to Plaintiff's Discovery Requests [131], and Defendant Jackson HMA, LLC,

filed a Motion to Compel Plaintiff's Production of Documents from his Personal Email Accounts

[134]. Vanderlan also filed a Motion to Re-Open Document Discovery to Allow the Court to

Rule on Pending Discovery Motions [153]. As explained below, Vanderlan's motion to compel

is granted in part but otherwise denied; Jackson HMA's motion to compel is denied; and

Vanderlan's motion to reopen discovery is denied.

I.      Facts and Procedural History

In 2013, Vanderlan worked as a physician with staff privileges at Central Mississippi

Medical Center (CMMC), a facility Jackson HMA owned and operated. Vanderlan says he noted

and complained of "numerous ongoing and systematic [EMTALA] compliance violations" at

CMMC. Am. Compl. [20] ¶ 57. He claims Jackson HMA retaliated against him for reporting

EMTALA violations by forcing him to resign his privileges at CMMC.

In 2015, Vanderlan filed an FCA case against Jackson HMA. *See United States ex rel. Vanderlan v. Jackson HMA, LLC,* No. 3:15-CV-DPJ-ASH. That case raised *qui tam* claims in the names of the United States of America and the State of Mississippi as well as a personal claim of retaliation under the FCA. In April 2023, the Court separated that case into two separate civil actions: the original case continued as to the *qui tam* claims, and this case was opened as a new civil action in which Vanderlan's FCA retaliation claim would be litigated. The next month, the Court granted Vanderlan's motion to amend the Complaint here to add an EMTALA retaliation claim.

On August 17, 2023, the parties met with United States Magistrate Judge F. Keith Ball for a telephonic case-management conference, after which Judge Ball entered a case-management order (CMO) that set a March 20, 2024 discovery deadline. Jackson HMA produced its first batch of documents on November 6, 2023.[1] Later in November, the parties filed their first set of discovery motions: Jackson HMA moved for a protective order and Vanderlan filed two motions to compel. Vanderlan's motions to compel asserted that Jackson HMA's production relative to requests for production (RFPs) 1 through 7, 10, 11, and 13 through 24 was incomplete. On February 19, 2024, Jackson HMA produced a second batch of documents,[2] and on February 21, Vanderlan moved to supplement his motion to compel to complain about the organization of Jackson HMA's document production.

On February 27, 2024, Judge Ball ruled on the then-pending discovery motions and directed Jackson HMA to produce additional documents responsive to RFPs 1, 5, and 6 by

---

[1] The first production included documents Bates numbered JHMA-BV 000001 through 017888.

[2] The second production included documents Bates numbered JHMA-BV 017889 through 019680.

March 22, 2024. Judge Ball denied Vanderlan's request concerning the organization of Jackson HMA's production for failure to have a discovery conference as required by Section 6.F.4. of the CMO.[3] On March 1, 2024, the case was reassigned to the undersigned upon Judge Ball's retirement.

On March 6, Vanderlan moved for reconsideration and a stay of Judge Ball's discovery order. Given that the discovery deadline was March 20, Vanderlan first asked the Court to "reconsider and/or clarify the Discovery Order to ensure that Jackson HMA is compelled to produce its additional documents well in advance of the deadline to allow Dr. Vanderlan to determine what additional discovery, if any, may be required." Mot. [105] ¶ 8. He next asked the Court to clarify or reconsider "the timeline for Jackson HMA's document production." *Id.* ¶ 9. And he asked the Court to "suspend[]" the time for him to appeal Judge Ball's ruling to the district judge under Rule 72. Mot. [106] ¶ 4. That same day, the parties filed a Joint Motion to Modify Case Management Order to "extend the time within which depositions may be taken" to April 19, 2024. Mot. [108] at 2. The parties did not ask for the deadline for document discovery to be extended. *Id.* ¶ 6. The Court granted that motion the next day and provided a written discovery deadline of March 22, 2024, and a deadline for deposition discovery of April 19, 2024.

---

[3] That section of the CMO provides:

> before a party may serve any discovery motion, counsel must first confer in good faith as required by Fed. R. Civ. P. 37(a)(1). If the attorney conference does not resolve the dispute, counsel must contact the chambers of the magistrate judge to request a telephonic conference to discuss the issue as contemplated by Fed. R. Civ. P. 16(b)(3)(B)(v). Only if the telephonic conference with the judge is unsuccessful in resolving the issue may a party file a discovery motion.

Also on March 7, 2024, the parties participated in a telephonic discovery conference with the undersigned. Because it was clear that the parties had failed to sufficiently discuss the issues as required by the CMO and Federal Rule of Civil Procedure 37(a)(1), the Court directed the parties to meet and confer further concerning the issues raised in (1) a February 22, 2024 letter from Vanderlan's counsel to Judge Ball about Jackson HMA's purportedly disorganized document dump and (2) a February 25, 2024 email to Judge Ball about Jackson HMA patient files and Vanderlan's deposition. *See Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 7049848, at *5 (N.D. Miss. Dec. 1, 2020) (explaining that "'conferment' [component of Rule 37] requires a party to have had or attempted to have had *an actual meeting or conference*" (quoting *Compass Bank v. Shamgochian*, 170 F.R.D. 166, 171 (D. Nev. 1996))). On March 8, 2024, Vanderlan withdrew his motions to reconsider and to stay the previous discovery order. Four days later he brought his issues with that order to the district judge through a Rule 72 objection.

On March 22, 2024, Jackson HMA produced a third set of documents.[4] Less than a week later, on March 27, Vanderlan's counsel hand-delivered a letter to the undersigned's chambers seeking leave to file new discovery motions without complying with the CMO, including a potential motion to re-open discovery. On April 1, 2024, the Court ordered compliance with Section 6.F.4. of the CMO. The Court's Order identified eight issues addressed in the March 27, 2024 letter and its attachments:

> (1) the proposed motion for sanctions and discovery violations;
>
> (2) the proposed motion to extend discovery/continue trial;
>
> (3) whether Defendant must organize its document productions differently;

---

[4] The third production included documents Bates labeled JHMA-BV 019681 through 020721.

(4) disagreement over the sufficiency of Defendant's privilege/redaction log;

(5) disagreement over the propriety of some of Defendant's redactions;

(6) Plaintiff's position that some responsive documents are missing from Defendant's production (*e.g.*, Defendant's response to the May 9, 2017 OIG letter);

(7) disagreement over Defendant's designation of certain documents as confidential under the Protective Order [40]; and

(8) disagreement over whether certain patient files Plaintiff seeks are the subject of a valid discovery request requiring their production.

Order [124] at 1–2.

On April 11, 2024, the Court held a telephonic discovery conference. It again concluded that the parties had failed to adequately discuss in good faith, sufficient detail, or both the various issues raised in the April 1 letter, so it directed the parties to meet and confer further on those issues. The Court discussed a possible extension of the discovery deadline on that call. Jackson HMA's counsel objected to extending discovery and, in response, Vanderlan's counsel stated he was not seeking to extend the written discovery deadline; he only wanted time to complete depositions after resolving these issues. Jackson HMA stated it did not oppose extending the deposition deadline.

On April 30, 2024, Jackson HMA moved to modify the CMO, seeking an extension of the dispositive-motion deadline and settlement-conference setting. On May 2, 2024, the Court had a follow-up discovery conference with the parties at which it (1) reminded them that in the March 6 joint motion and on the April 11 conference call, neither party requested an extension of the written discovery deadline and (2) informed them that it did not intend to extend written discovery. No party voiced any dissent. The Court also set a May 10, 2024 deadline for

5

concluding the meet-and-confer efforts discussed during the April 11 conference, set a follow-up discovery conference for May 13, and terminated the motions deadline and settlement conference setting. On May 13, 2024, the Court held a final discovery conference; it authorized the filing of motions addressing the remaining discovery issues by May 23, 2024. The parties filed their motions to compel on May 23, and on July 8—in response to a timeliness challenge raised by Jackson HMA's opposition brief—Vanderlan moved to reopen written discovery. All motions are fully briefed.

II.     Analysis

A.     Motion to Re-Open Discovery

Document discovery closed on March 22, 2024. In response to Jackson HMA's argument that Vanderlan's present motion to compel is untimely under Local Rule 7(b)(2)(B) (and despite several times disclaiming a desire to extend the written discovery deadline), Vanderlan moved on July 8 to reopen document discovery, citing Federal Rule of Civil Procedure 16(b)(4).[5] Vanderlan says he wants "to ensure that there will be no procedural impediment to the Court ruling on the pending discovery Motions." Vanderlan Mem. [154] at 3; *see also* Rebuttal [159] at 2 ("Vanderlan only requests that document discovery be re-opened, if necessary, to allow this Court to rule on the . . . pending [d]iscovery [m]otions."). Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."

> Courts in the Fifth Circuit consider four factors "when determining whether there is good cause under Rule 16(b)(4): '(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential

---

[5] Local Rule 7(b)(2)(C), which will be discussed further below, provides, "A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court, and time to effectuate the court's order before the discovery deadline."

> prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice.'" *Squyers v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (quoting *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)) (alterations in *Squyres*).

*Weikel v. Jackson Pub. Sch. Dist.*, No. 3:18-CV-408-DPJ-FKB, 2020 WL 1318798, at *2 (S.D. Miss. Mar. 20, 2020).

Jackson HMA says Vanderlan's motion is also governed by Rule 6(b)(1)(B), which states that "the court may, for good cause, extend [a deadline] . . . on motion made after the [deadline] has expired if the party failed to act because of excusable neglect." *See Sauceda v. City of San Benito*, 78 F. 4th 174, 191 (5th Cir. 2023) (applying Rule 6(b)(1)(B) to summary-judgment motion filed after case-management deadline for such motions). For his part, Vanderlan agrees that he "is not claiming inadvertence, mistake, or neglect." Rebuttal [159] at 7. So if Rule 6(b)(1)(B) applies, Vanderlan has not shown what is required to obtain an extension. *But see CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 124 n.5 (3d Cir. 2015) (finding request to reopen discovery period is "squarely within the ambit of Rule 16(b)" such that Rule 6(b)(1)(B) does not apply).

Assuming only Rule 16(b) applies, the Court finds Vanderlan has not shown good cause to extend the deadline for written discovery, which expired 108 days before he filed his motion. Starting with Vanderlan's explanation for the failure to timely comply with the discovery deadline, he complains that Judge Ball ruled on the previous discovery motions and Jackson HMA produced a second set of documents within the final 30 or so days of discovery. But Vanderlan made no move at that time—with the discovery deadline looming—to seek an extension. If, as Vanderlan says, he suspected that Jackson HMA's February 19, 2024 document production "was not complete," he should have sought an extension of the discovery deadline. Rebuttal [159] at 3. But not only did he fail to seek an extension, as detailed above, he informed

the Court more than once that he was not interested in extending the deadline for written discovery. Vanderlan was on notice of Local Rule 7(b)(2)(B), the approaching discovery deadline, and the fact that he believed there were discovery issues outstanding before March 22, 2024. Further, the obligation to meet and confer on discovery disputes and that the process takes time can come as no surprise. It is required by Federal Rule of Civil Procedure 37(a)(1) and Section 6.F.4. of the Court's Case Management Order [34]. Yet Vanderlan let the discovery period expire and waited more than three additional months before moving for an extension. And then did so only in response to Jackson HMA's opposition brief. He could and should have sought relief from the deadline earlier. This factor weighs against Vanderlan's requested extension.

Turning to the importance of the requested extension, Vanderlan says in his rebuttal that he needs "patient files to address the merits of Jackson HMA's affirmative defense," "documents relating to Jackson HMA's argument that [he] is not an EMTALA employee," and "un-redacted copies of [Jackson HMA's] documents to allow Vanderlan and the Court to determine how these documents may relate to Jackson HMA's defenses or Vanderlan's claims." Rebuttal [159] at 5. As explained below, Vanderlan never propounded a discovery request asking for the patient files, Jackson HMA represents that it has produced all relevant documents relating to his employment status, and the Court will review the privilege claims in camera. This also weighs against the extension.

As to prejudice and the availability of a continuance, Jackson HMA persuasively argues that re-opening discovery solely to resuscitate the requests at issue in Vanderlan's motion amounts to "retroactively grant[ing] Vanderlan four months of discovery that Jackson HMA never had." Jackson HMA Mem. [156] at 5. A continuance would "delay[] resolution of the case

and add[] to [Jackson HMA's] expenses" and "'would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.'" *Garza v. Allstate Tex. Lloyd's Co.*, 284 F. App'x 110, 113 (5th Cir. 2008) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). This case was severed from a long-pending *qui tam* action, and a continuance would only compound the existing delay and unfair prejudice to Jackson HMA.

For all these reasons, Vanderlan's motion to re-open discovery is denied.[6]

B.      Vanderlan's Motion to Compel

Vanderlan's motion arises under Federal Rule of Civil Procedure 37(a), which allows a party "to move for an order compelling" discovery "[i]f a party fails to make a disclosure required by Rule 26(a)" or if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(A) & (B)(iv). The rule contemplates a motion "to compel production of materials that are within the scope of discovery and have been *requested* but not received." *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) (emphasis added).

> [A] proper Rule 37(a) motion to compel . . . "must specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute, including, for example, explaining . . . how a response or answer is deficient or incomplete . . . ."

*Samsung Electronics Am. Inc. v. Yang Kun "Michael" Chung*, 324 F.R.D. 578, 594 (N.D. Tex. 2017) (quoting *Harrison v. Wells Fargo Bank, N.A.*, No. 3:13-CV-4682-D, 2016 WL 1392332, at *7 (N.D. Tex. Apr. 8, 2016)). Beyond this threshold issue, on a motion to compel, "[t]he party resisting discovery must show specifically how each discovery request is not relevant or

---

[6] That said, because the Court previously granted the parties additional time to complete depositions based on their agreement, the Court will give the parties an opportunity for additional deposition discovery after it rules following the *in camera* review discussed below.

otherwise objectionable." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018)

(citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.

1990)).

With these general standards in mind, the Court begins with Local Rule 7(b)(2)(C): "A

party must file a discovery motion sufficiently in advance of the discovery deadline to allow

response to the motion, ruling by the court and time to effectuate the court's order before the

discovery deadline." "The obvious purpose of Rule 7(b)(2)(C) is to resolve disputes over the

scope of discovery while time remains to conclude it." *Gipson v. Mgmt. & Training Corp.*, No.

3:16-CV-624-DPJ-FKB, 2018 WL 736265, at *6 (S.D. Miss. Feb. 6, 2018). And "[d]istrict

courts in this State have routinely denied discovery motions in violation of Local Rule

7(b)(2)(C)." *United States ex rel. Jehl v. GGNSC Southaven LLC*, No. 3:19-CV-91-MPM-JMV,

2021 WL 2637278, at *1 (N.D. Miss. June 25, 2021) (collecting cases).

Vanderlan's motion—filed 2 months after the discovery deadline—was not filed

"sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the

court and time to effectuate the court's order before the discovery deadline." L.U. Civ. R.

7(b)(2)(C). Vanderlan says "the Court's meet and confer requirements and Jackson HMA's

delayed production made it impossible for [him] to comply with [Rule] 7(b)([2])(C)." Vanderlan

Mem. [135] at 16. But, as explained above, nothing prevented Vanderlan from seeking an

extension of the discovery deadline before it expired. Vanderlan's disagreement with the meet-

and-confer requirements of Rule 37(a)(1) and Section 6.F.4. of the Case Management Order [34]

is no excuse for his noncompliance. The Court repeatedly placed Vanderlan on express notice of

these obligations. *See* Case Management Order at 3 (imposing meet and confer requirements);

Order [100] at 5 (denying relief for failure to confer on "document dump" issue); Order [124] (denying Vanderlan's request to be excused from complying with Section 6.F.4. of the CMO).[7]

Vanderlan's motion is generally untimely under Local Rule 7(b)(2)(C). The one exception is new matters arising from Jackson HMA's compliance with Judge Ball's February 27, 2024 Order.[8] Vanderlan's motion, however, focuses almost exclusively on old discovery issues that predate that ruling. Vanderlan cannot rely on Judge Ball's February 27, 2024 Order and the production arising from it to immunize his other discovery disputes from the timeliness mandate of Local Rule 7(b)(2)(C). Having determined the effect of Local Rule 7(b)(2)(C), the Court turns to the particular discovery issues raised by Vanderlan's motion.

1.      Patient Files

Vanderlan claims that Jackson HMA has "disclosed its intent to use . . . investigations or performance review documents to support its affirmative defenses in this case." Vanderlan Mem. [135] at 19. He therefore says that Jackson HMA "was obligated to disclose . . . patient files [of patients Vanderlan treated] as part of its Initial and Supplemental Disclosures and . . . in response to" RFPs 9, 12, "and/or" 25. *Id.*

---

[7] In rebuttal, Vanderlan says that "the issue of timing became when the Court . . . rejected [his] request to file a motion to re-open discovery and, instead, ordered the parties to continue to meet and confer past the discovery deadline." Vanderlan Rebuttal [149] at 4. The Court rejected Vanderlan's request because (1) it was not presented to the Court in the form of a motion as required by Local Rule 7(b) and (2) Vanderlan's letter contained "no indication the parties ha[d] properly conferred on these disputes." Order [124] at 2.

[8] In that Order, Judge Ball directed Jackson HMA to produce additional documents by March 22, 2024—two days after discovery was originally set to close, but later the date discovery closed pursuant to the Court's March 7 Text-Only Order. For any issues Vanderlan raises arising out of Jackson HMA's production in response to Judge Ball's Order, the Court would excuse compliance with Local Rule 7(b)(2)(C) because of the overlap between the date for compliance with Court's Order and the discovery deadline.

The Court finds this issue is untimely because it did not arise out of the production Judge Ball ordered on February 27, 2024. Vanderlan complained to Jackson HMA about the failure to produce certain patient files "that could be used to support Jackson HMA's claims/defenses" before Judge Ball's February 27, 2024 Order (and at least as early as February 21). Welsh Decl. [131-2] Ex. L. Even so, Vanderlan's focus on Jackson HMA's initial disclosures as a basis for production demonstrates the issue is much older, dating back to September 2023 when Jackson HMA served its disclosures. Vanderlan did not ask for an extension of the discovery deadline between then and March 22 to develop this or other then-pending issues.

But more importantly, the Court is not convinced Jackson HMA was required to turn over these documents in discovery at all. Starting with the RFPs, under Rule 34(b)(1)(A), a request "must describe with reasonable particularity each item or category of items" the requesting party is seeking. A couple of district court cases out of Texas are illustrative.

In *Harper v. City of Dallas*, the plaintiffs moved to compel production of autopsy photographs but did "not identif[y] a Rule 34(a) request served on the City that would require production of autopsy photos." No. 3:14-CV-2647, 2017 WL 3674830, at *17 (N.D. Tex. Aug. 26, 2017). The court denied the motion, noting that "[e]ven if Plaintiffs ha[d] complied with Rule 34(a) in requesting autopsy photos from the City of Dallas," they had not shown the City had control over additional responsive documents. *Id.*

In *Rotstain v. Trustmark National Bank*, the parties disputed whether the defendants' requests for production required the plaintiff "to produce 'all communications' between its chairperson and" certain investors. No. 3:09-CV-2384, 202 WL 6550501, at *6 (N.D. Tex. Nov. 6, 2020). While the defendants had an argument to support their position that the requested documents fell within their RFPs, the court found that "'all' communications" between the

plaintiff's chairperson and the investors were not "responsive to" the RFPs on which the defendants relied.

Here, unlike in *Rotstain*, Vanderlan lacks a colorable argument that the patient files are responsive to the RFPs on which he relies. Those RFPs sought production of:

- "all emails, meeting minutes, reports, memoranda, investigations, or other such documents relating to Dr. Vanderlan's employment with you," Welsh Decl. [131-2] Ex. A at 8;

- "all documents which you believe support a position that Dr. Vanderlan voluntarily resigned and/or left for other reasons," *id.* at 10; and

- "all documents that support [Jackson HMA's] denial . . . of . . . Request for Admission No. 2," Welsh Decl. [131-2] Ex. J at 4, which asked Jackson HMA to "admit that [it] ha[s] no evidence to support a claim or defense that Dr. Vanderlan committed any violations while on staff at CMMC," Welsh Decl. [131-2] Ex. H at 3.

None of these requests identifies the files of all—or any subset of—the patients Vanderlan treated at CMMC as a category of documents sought by the request. And certainly not with the required "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). Simply put, Vanderlan never issued a document request under Rule 34 seeking the production of patient files. *See Tex. Democratic Party v. Dallas County*, No. 3:08-CV-2117, 2010 WL 5141352, at *2 (N.D. Tex. Dec. 9, 2010) ("Whether the documents are relevant to the determination of plaintiffs' application for attorney's fees is of no significance absent a proper request for production.").

As to whether Jackson HMA was required to produce them under Rule 26(a)(1), that rule requires a party to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." It is evident from the briefing and Jackson HMA's disclosures that it does not intend to use the patient files "to support its claims or defenses." Fed.

R. Civ. P. 26(a)(1)(A)(ii). But Vanderlan says Rule 26 requires Jackson HMA "to produce all documents 'relating to its affirmative defenses' not just those documents that 'it might rely on.'" Vanderlan Mem. [135] at 20 (quoting *Marlow LLC v. Bellsouth Telecommunications, Inc.*, No. 2:10-CV-135-KS-MTP, 2011 WL 61176, at *2 (S.D. Miss. Jan. 7, 2011)). Vanderlan's reading of the rule conflicts with its plain language and the case he cites as support.

> [T]he scope and timing of [a party's] initial disclosures under [Rule] 26 differ from the duties imposed under a request for production of documents under [Rule] 34. For example, as part of its initial disclosures, [a party] is obligated to produce or identify documents it "may use *to support its claims or defenses* . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). (Emphasis added). [It] is not necessarily required . . . to produce everything in its possession that may ultimately be discoverable at the pre-discovery disclosure stage. Conversely, [a party] is required to produce all discoverable materials relating to its affirmative defenses, not just those it might rely on, *in response to a request for production of documents*.

*Marlow LLC*, 2011 WL 61176, at *2 (second emphasis added) (footnote omitted). As noted, Vanderlan has not pointed to a document request seeking patient files or all documents related to Jackson HMA's affirmative defenses. Without a request, the Court will not compel Jackson HMA to produce them. The motion to compel is denied as to patient files.

2.     Accounting Policy

In its February 19, 2024 document production, Jackson HMA produced a February 26, 2014 email from Catherine Cook to Scott Whittemore that stated:

> As you may know, HMA had a policy of capitalizing all physician income guarantees, including those with employed or hospital-based physicians or physician management groups. Since this is inconsistent with our accounting policy we will be doing a review to remove through purchase accounting any assets and liabilities related to income or subsidy agreements with employed or hospital-based physicians.
>
> On a go-forward basis, starting in February 2014, all such agreements and related payments must be accounted for under our policy, which we have attached for your reference.

14

Ex. 19 [164]. The header to the email indicates that the sole attachment to the email was a

Microsoft Excel file named "CMMC MS workbook 02.26.2014"—apparently *not* the accounting

policy. Jackson HMA has not produced its accounting policy, and Vanderlan asks the Court to

compel its production in response to RFPs 9 and/or 14. Like the patient-files issue, this request is

untimely: it did not arise directly out of the production Judge Ball ordered on February 27, 2024.

Indeed, Jackson HMA produced the email eight days before Judge Ball's order. And Vanderlan

first asked Jackson HMA specifically about the accounting policy in an April 24, 2024

meeting—more than a month *after* the close of discovery.

But here, too, the motion fails on the merits. As noted, RFP 9 sought production of "all

emails, meeting minutes, reports, memoranda, investigations, or other such documents relating to

Dr. Vanderlan's employment with you." Welsh Decl. [131-2] Ex. A at 8. Jackson HMA's

accounting policy neither falls within the category of "emails, meeting minutes, reports,

memoranda, investigations, or other such documents," nor "relat[es] to Dr. Vanderlan's

employment" with Jackson HMA. *Id.* This is especially so in view of Rule 34's particularity

requirement. RFP 14 stated: "If you contend that Dr. Vanderlan owes you money as a result of

his actions, then please produce a copy of all documents which support your calculations of any

amount owed." *Id.* at 11. Vanderlan says that the accounting policy may touch on his income

guarantee. But he has not shown that it would support Jackson HMA's calculations of money

Vanderlan owes it. So he has not shown it is responsive to RFP 14.[9] Because the accounting policy is not responsive to either of the RFPs Vanderlan relies on, his motion to compel its production is denied.

### 3. Human Resources and Staff Files

Vanderlan asks the Court to compel production of his human resources and medical staff files under RFP 9. Jackson HMA states that it "did not maintain 'human resources' files for non-employee physicians like him, but that [it] produced records that could be seen to comprise a medical staff file." Jackson HMA Mem. [143] at 17. In rebuttal, Vanderlan says that if the Court accepts Jackson HMA's representation, "then Dr. Vanderlan will have no objection." Rebuttal [149] at 11. The Court thus finds this issue moot.[10]

### 4. Central Mississippi Trauma Board Minutes

Vanderlan represented Jackson HMA on the Central Mississippi Trauma Board, and he asks the Court to compel Jackson HMA to produce minutes from that board's meetings under RFP 9. This issue is untimely because Judge Ball's February 27, 2024 Order did not address RFP 9, and Vanderlan first raised the issue with Jackson HMA more than a month after the close of discovery.

---

[9] Vanderlan again complains that "Jackson HMA did not organize its documents to correspond to specific categories in Dr. Vanderlan's discovery requests." Rebuttal [149] at 9. Vanderlan raised this in his previous discovery motion, and Judge Ball declined to consider it because Vanderlan did not raise it in a discovery conference as required by the CMO. Order [100] at 5–6. Vanderlan did not request permission to pursue this issue in his motion during the final May 13, 2024 discovery conference. It is not properly before the Court. Vanderlan also says that since Jackson HMA thought the email itself was responsive to an RFP, the accounting policy it references must also be responsive to some RFP. This is unpersuasive because Vanderlan fails to point to an RFP to which the accounting policy would be responsive.

[10] It also appears to be untimely because Judge Ball's February 27, 2024 order did not address RFP 9 and Vanderlan first raised the issue with Jackson HMA on April 30, 2024—more than a month after discovery closed.

Turning to the merits, RFP 9 requests production of "meeting minutes . . . relating to Dr. Vanderlan's employment with you." Welsh Decl. [131-2] Ex. A at 8. But it does not require production of *all* minutes from all meetings that may have taken place while Vanderlan worked at CMMC. The Rule 34 request on which he relies is neither broad enough nor reasonably particular enough to support Vanderlan's request for the documents he now seeks in his motion.

Vanderlan also complains that Jackson HMA failed to produce minutes from the July 2013 and November 2013 Central Mississippi Trauma Board meetings. Rebuttal [149] at 13. But the record before the Court fails to demonstrate that Jackson HMA even has possession of copies of those minutes. Moreover, when Vanderlan was deposed in a separate state-court case in 2016, he testified that he had copies of the meeting minutes of the Central Mississippi Trauma Board. Vanderlan Dep. [142-4] at 5–6 (CM/ECF pagination). Based on all of this, the Court denies Vanderlan's motion as to the Central Mississippi Trauma Board meeting minutes.

5.     Jackson HMA Agenda/Meeting Minutes

Vanderlan asks the Court to compel Jackson HMA to produce "all emails, agenda[s], and minutes from CMMC staff meetings that took place while Dr. Vanderlan was on staff at CMMC." Vanderlan Mem. [135] at 25. This issue is untimely for the same reasons the Central Mississippi Trauma Board meeting minutes issue is untimely.

In his opening Memorandum, Vanderlan says generally that he "cannot be assured that Jackson HMA has produced all responsive documents." Vanderlan Mem. [135] at 25. He changes tack in rebuttal, stating that Jackson HMA's bylaws "require [it] to keep and preserve minutes from all staff meetings" and listing six meetings for which Jackson HMA failed to produce meeting minutes. Rebuttal [149] at 13–14. Vanderlan does not inform the Court where in the record Jackson HMA's bylaws are, so it has no way of verifying that this unsupported

17

factual assertion is correct. And because the more specific argument was raised in rebuttal,

Jackson HMA could not respond regarding the six meetings about which Vanderlan now

complains. "Ordinarily, the Court need not consider arguments raised for the first time in a reply

brief." *Wood v. N. Miss. Health Servs., Inc.*, No. 1:20-CV-42-TBM-RP, 2023 WL 5662574, at *1

(N.D. Miss. Aug. 31, 2023) (citing *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)); *see*

*Thompson v. Dall. City Att'y's Off.*, 913 F.3d 464, 471 (5th Cir. 2019) ("A district court does not

abuse its discretion when it considers an argument raised for the first time in a reply brief *so long*

*as it gives the 'non-movant an adequate opportunity to respond prior to a ruling*.'" (quoting *Vais*

*Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)) (emphasis added).

Even if the Court were to consider the new argument, Vanderlan has not shown that the

minutes from the six meetings raised in his rebuttal relate to his employment and therefore come

within RFP 9's ambit. For example, the mere fact that EMTALA was on the agenda does not

indicate the meeting related to Vanderlan's employment at Jackson HMA. Vanderlan has not

shown that Jackson HMA withheld responsive documents. For all these reasons, the motion is

denied as to Jackson HMA meeting agendas and minutes.

> 6.    Documents Produced in Response to Mississippi Board of Medical
>        Licensure Subpoena

On March 3, 2014, the Mississippi Board of Medical Licensure served CMMC with a

subpoena seeking

> all records pertaining to employment, any investigation and/or
> actions taken by the medical staff of [CMMC] against . . . Vanderlan
> . . . including but not limited to complaints, audits, investigative
> reports or memoranda, minutes of meetings of the board of trustees,
> medical staff or any ad hoc committee(s), peer review, requests for
> corrective action, e-mails and/or correspondence to or from . . .
> Vanderlan . . . , all disciplinary findings, recommendations, dis-
> missals, resignations letters or order pertaining thereto, if any, and
> rendered by [CMMC], its medical staff, or board of trustees.

Ex. 24 [164-1] at 1. Vanderlan asks the Court to compel Jackson HMA to produce "all documents that it produced in response to" this subpoena as responsive to RFP 9. Vanderlan Mem. [135] at 25. Jackson HMA says that it has produced "all of the documents that were or would have been provided . . . in response to the subpoena." Welsh Decl. [131-2] Ex. Z at 9. In rebuttal, Vanderlan offers no reason to believe Jackson HMA has withheld anything responsive to RFP 9, instead complaining about the organization of Jackson HMA's document production. Again, this is an issue Judge Ball rejected for failure to comply with the CMO, and Vanderlan did not request permission to pursue this issue in his motion during the final May 13, 2024 discovery conference. Because Vanderlan has not shown there is anything more to compel, his motion is denied on this issue.[11]

### 7. Emails relating to Vanderlan

During discovery, Vanderlan produced a copy of an email that he believes Jackson HMA should have produced but didn't. Based on that omission, Vanderlan says he "cannot be assured that Jackson HMA has produced" all emails relating to his tenure at Jackson HMA as requested in RFP 9. Vanderlan Mem. [135] at 26. Jackson HMA concedes that it could not locate in its own records the email Vanderlan separately produced. But it says it has made a complete production—having "produced nearly 10,000 pages of email relating to Vanderlan, including the entirety of Vanderlan's HMA (@hma.com) email account"—and that the issue is untimely. Jackson HMA Mem. [143] at 23.

Starting with timeliness, Vanderlan first raised the issue with Jackson HMA in a March 13, 2024 letter—nine days before the close of discovery. That is obviously not sufficiently in

---

[11] The issue is also untimely as Judge Ball's February 27, 2024 Order did not address RFP 9 and Vanderlan first raised the issue with Jackson HMA on April 30, 2024.

advance of the discovery deadline under Local Rule 7(b)(2)(C). And an incomplete production of emails in response to RFP 9 was not addressed in Judge Ball's February 27, 2024 Order. This email issue is untimely.

On the substance, Vanderlan has not convinced the Court that there are documents responsive to RFP 9 that Jackson HMA has failed to produce. And the Court agrees with Jackson HMA that an order to produce *all* emails related to Vanderlan is overly broad and not proportional to the needs of the case. The motion is denied as to emails relating to Vanderlan.

8.    Staff Privileges List and Call Schedules[12]

On February 19, 2024, Jackson HMA produced a September 16, 2013 email indicating that a "list of all approved privileges" of physicians working at CMMC is "now available on the CMMC Intranet." Ex. 35 [131-35]. Also on February 19, Jackson HMA produced an October 31, 2013 email indicating that call schedules "are now available on the P/Drive under call schedules." Ex. 36 [131-36]. Vanderlan says that "Jackson HMA should be ordered to produce the approved privilege list identified in [the February] email, as well as all privilege lists for the time that Dr. Vanderlan was on staff at CMMC." Vanderlan Mem. [135] at 30. And he argues "Jackson HMA should be ordered to produce the call schedules identified in [the October] email, as well as all call schedules for the time that Dr. Vanderlan was on staff at CMMC." *Id.* In his opening memorandum, Vanderlan does not identify a specific Rule 34 request to which these items would be responsive, but in rebuttal he relies on RFP 9. The Court is not convinced that these documents fit within the categories of documents broadly sought by RFP 9. *See* Welsh Decl. [131-2] Ex. A at 8 (seeking production of "all emails, meeting minutes, reports,

_____

[12] Vanderlan lumped these two issues under his argument that Jackson HMA overly redacted some documents, but they appear to present issues other than redaction, so the Court is addressing them separately.

memoranda, investigations, or other such documents relating to Dr. Vanderlan's employment

with you"). Rule 34 requires particularity, and if Vanderlan wanted staff privileges lists and call

schedules—documents he, as a physician, surely knew might exist—he needed to do more than

serve a dragnet request for all documents relating to his employment. The issue is also untimely:

Judge Ball's February 27, 2024 Order did not require production of other documents responsive

to RFP 9, and Vanderlan first raised these issues in a May 7, 2024 email to Jackson HMA's

counsel—well after the close of discovery. The motion to compel is denied as to the staff

privileges lists and call schedules.

### 9.    Redacted Documents

Finally, Vanderlan identifies twelve documents that he says Jackson HMA improperly or

overly redacted: Ex. 27 (JHMA-BV 017900–04) [131-27]; Ex. 28 (JHMA-BV 017909–12) [131-

28]; Ex. 29 [164-3]; Ex. 30 [164-4]; Ex. 32 (JHMA-BV 19190–91) [131-32]; Ex. 34 [164-5]; Ex.

40 (JHMA-BV 20462–63) [131-40]; Ex. 41 (JHMA-BV 20467–69) [131-41]; Ex. 43 [164-6];

Ex. 44 (JHMA 20736–39) [131-44]; Ex. 47 (JHMA-BV 20777–87 [131-47]; and Ex. 50 [164-9].

He asks the Court to require Jackson HMA to produce unredacted copies of those documents to

the Court for *in camera* review to test Jackson HMA's claims of attorney-client privilege and

work-product protection. Jackson HMA says this issue is untimely as to all twelve documents

because Vanderlan did not raise it until after discovery closed. It also argues that Vanderlan has

not shown an *in camera* review is necessary.

Starting with the timing issue, Jackson HMA did not produce a privilege log until

February 23, 2024—less than 30 days before the expiration of discovery. Welsh Decl. [131-2]

¶ 70. While some of documents at issue in Vanderlan's motion are from Jackson HMA's third

production, others are not. Jackson HMA has failed to explain why its privilege log—something

it is affirmatively required to serve under Local Rule 26(e)—was late. Whatever the reason may be, Jackson HMA should have given Vanderlan a privilege log earlier, and the Court will excuse the untimeliness of Vanderlan's motion on these issues.

Turning to the substance, "[w]hen a party asserts a claim of privilege as to otherwise discoverable information, 'the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'" *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 486 (N.D. Miss. 2006) (quoting Fed. R. Civ. P. 26(b)(5)). "[A] party asserting a privilege must provide sufficient information within the log so that the court and the requesting party can determine whether the log entry satisfies *each element* of the asserted privilege . . . ." *Id.*

> [A]n *in camera* review is not appropriate merely because a party requests the district court undertake the endeavor. *United States v. Zolin*, 491 U.S. 554, 571[] (1989). Where there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege, the court must utilize its own discretion and determine whether *in camera* review is appropriate under the circumstances presented. *Id.* at 571–72.

*Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, No. 3:13-CV-4136-P, 2015 WL 12916409, at *1 (N.D. Tex. Feb. 6, 2015).

The Court is fairly sure it located ten of the documents at issue on Jackson HMA's privilege log and believes it found the eleventh and at least part of the twelfth, as well. *See* Welch Decl. [131-2] Ex. BB, Log Nos. 12 (Ex. 30), 13 (possibly Ex. 43), 38–44 (Ex. 50), 54 (Ex. 32), 90 (Ex. 44), 254 (Ex. 34), 257 (Ex. 29), 287 (Ex. 28), 291 (Ex. 27); *id.* Ex. CC, Log Nos. 425 (Ex. 40), 426 (Ex. 41); *id.* Ex. EE, Log Nos. 365–66 (possibly parts of Ex. 47). The parties' briefing doesn't make this easy. For five of the documents, the claim of privilege

depends solely on communications with in-house counsel. *See* Welch Decl. [131-2] Ex. BB, Log

Nos. 12 (Ex. 30), 54 (Ex. 32), 257 (Ex. 29), 287 (Ex. 28), 291 (Ex. 27). Given this fact—and

because the universe of the documents in question is relatively small and the Court cannot be

certain it correctly identified each document on the privilege logs—the Court will order Jackson

HMA to produce unredacted copies of all twelve documents for *in camera* review to test the

privilege assertions. *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex.

2009) ("[B]ecause in-house counsel has an increased level of participation in the day-to-day

operations of the corporation, it is more difficult to define the scope of the privilege when a

communication is made to in-house counsel.") (citing *Upjohn Co. v. United States*, 449 U.S. 383,

389 (1981)).[13]

C.     Jackson HMA's Motion to Compel

Jackson HMA asks the Court to compel Vanderlan to produce additional emails to and

from his personal email accounts that are responsive to its discovery requests. It concedes that it

"did not file [its] motion in sufficient time for it to be ruled upon before the close of document

discovery," an admission that its motion is untimely. Jackson HMA Mot. [134] at 1 n.1. The

Court agrees: Jackson HMA's motion is untimely under Local Rule 7(b)(2)(C). For that reason,

it is denied.

---

[13] That said, the Court will not order Jackson HMA to produce "un-redacted copies [of] all documents concerning Rick Carlton's contacts, emails, and/or letters to Jackson HMA and/or Jackson HMA['s] counsel regarding Dr. Vanderlan," or "all documents relating to contacts, emails, and/or letters between Miller and Gilchrist." Vanderlan Mem. [135] at 29, 32. Starting with the former, Vanderlan acknowledges there was no Rule 34 request for these documents but contends they should have been produced under Rule 26 as relating to Jackson HMA's affirmative defenses. But as the Court has explained, Vanderlan misreads Jackson HMA's disclosure obligation under Rule 26. As to the latter, Jackson HMA says that "Vanderlan has not previously asked for this relief, and the Court has not granted him leave to file a motion to compel for this relief." Jackson HMA Mem. [143] at 32 n.14. Vanderlan does not suggest otherwise in his rebuttal, and the Court agrees with Jackson HMA.

III.     Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For all these reasons, Vanderlan's motion to reopen discovery [153] is denied. His motion to compel [131] is granted in part to the extent that Jackson HMA must produce to the Court for *in camera* review, on or before October 11, 2024, unredacted copies of the 12 documents identified in this Order but is otherwise denied. Once the Court rules on the claims of privilege, it will set this matter for a telephonic status conference to discuss whether the parties still want additional time for deposition discovery. Jackson HMA's motion to compel [134] is denied.

**SO ORDERED AND ADJUDGED** this the 2nd day of October, 2024.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE