UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

W. BLAKE VANDERLAN, M.D.                                                    PLAINTIFF

V.                                                CIVIL ACTION NO. 3:23-CV-258-DPJ-ASH

JACKSON HMA, LLC D/B/A CENTRAL
MISSISSIPPI MEDICAL CENTER A/K/A
MERIT HEALTH CENTRAL – JACKSON                                        DEFENDANT

ORDER

This case is before the Court following an *in camera* review of documents either withheld

from production or produced with redactions by Defendant Jackson HMA, LLC, d/b/a Central

Mississippi Medical Center a/k/a Merit Health Central – Jackson. *See* Order [165] at 21–23.

Plaintiff W. Blake Vanderlan, M.D., challenges Jackson HMA's assertion of the attorney-client

privilege and work-product doctrine as to the withheld and redacted documents. Having

reviewed unredacted copies of the documents in question, the Court rules as follows.[1]

The attorney-client privilege "limits the normally broad disclosure requirements of

Federal Rule of Civil Procedure 26." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir.

2017) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa.

2005)). A party asserting that a communication is covered by the privilege "must prove: (1) that

[it] made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary

purpose of securing either a legal opinion or legal services, or assistance in some legal

proceeding." *Id.* (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997))

(emphasis in *Robinson*). "[I]n the corporate setting, the attorney-client privilege may apply to

---

[1] The Court and the parties are familiar with the factual and procedural background, so this Order
omits them.

communications with in-house counsel, [but] 'the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions.'" *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 26 (N.D. Tex. 2021) (quoting *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). It "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Adams v. Mem. Hermann*, 873 F.3d 343, 349 (5th Cir. 2020) (quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991)). "It protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *Id.*

With these standards in mind, the Court addresses the documents, which it has categorized into six distinct batches, in light of the arguments raised by Vanderlan.

**Batch One.** Batch One includes documents Bates labeled JHMA-BV-17900–04, 17909–12, and 20736–39. They are Exhibits 27, 28, and 44 to Vanderlan's Motion to Compel [131] and are listed as Items 291, 287, and 90 on Jackson HMA's privilege log. Jackson HMA asserts the attorney-client privilege and the work-product doctrine as to the redacted portions of the documents, which are all strings of email correspondence from December 2013 and May 2014 following a phone call from Vanderlan to "Angela Willard at Jackson HMA" in which Vanderlan "report[ed] '14 violations against [Jackson] HMA.'" Vanderlan Mem. [135] at 27 (quoting Dec. 23, 2013 Willard Email (JHMA-BV-017912)). Among those included on the email

strings are in-house attorneys Steve Clifton, Clifton Smith, Sally McKee, and Mary Parsons. Baldwin Aff. [142-8] ¶¶ 10, 12.

Vanderlan says the emails "appear to have been generated in the normal course of business as Jackson HMA considered how to respond to Dr. Vanderlan's call" "regardless of the fact that [they were] copied to in-house counsel." Vanderlan Mem. [135] at 27. Jackson HMA, on the other hand, argues that the redacted portions of the emails "reflect instructions from legal counsel and information provided to counsel which was gathered in anticipation of litigation and at the direction of legal counsel." Welch Decl. [131-2] at 291 (May 10, 2024 Seanor Letter).

Having reviewed unredacted versions of the documents *in camera*, the Court agrees with Jackson HMA, based on the context and the substance of these communications, that the redacted portions of the emails contain communications protected by the attorney-client privilege and were generated for the purpose of obtaining or providing legal assistance. It does not appear to the Court that these communications concern business advice rather than legal advice. But even if they did involve some degree of business advice, it is clear that the manifest purpose of the communications was to seek or give legal advice in response to Vanderlan stating he had knowledge about violations that he thought Jackson HMA "would like to resolve before he went to other authorities." Dec. 23, 2013 Willard Email (JHMA-BV-17903). Because the Court finds that the attorney-client privilege applies, it need not analyze the applicability of the work-product doctrine. *See Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 161 (S.D. Tex. 2009) ("If the court decides that the attorney-client privilege applies, [it] do[es] not reach the question whether the work product doctrine applies." (citing *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981); *Swidler & Berlin v. United States*, 524 U.S. 399, 401 n.1 (1998))); *Ferko v. NASCAR*, 218 F.R.D. 125, 136 (E.D. Tex. 2003) ("Courts ordinarily apply the work-product

doctrine only after deciding that the attorney-client privilege does not apply." (citing *Upjohn Co.*, 449 U.S. at 397)).

*Batch Two.* Batch Two includes documents Bates labeled JHMA-BV-17955–56 and 19614. They are Exhibits 29 and 34 to Vanderlan's Motion to Compel [131] and are listed as Items 257 and 254 on Jackson HMA's privilege log. Jackson HMA claims the attorney-client privilege and work-product doctrine as to the former and only the work-product doctrine as to the latter. The documents are both email strings beginning with an unredacted May 6, 2014 email from one Jackson HMA employee, Laura Knight, to another, Charlotte Dupre, about some weekend issues "inolv[ing] Vanderlan." May 6, 2014 Knight Email (JHMA-BV-17956); *see* Baldwin Aff. [142-8] ¶ 18. Vanderlan believes the redacted emails that follow "appear to have been generated in the usual course of business, i.e., the hospital's investigation into one of its physicians." Vanderlan Mem. [135] at 28. Jackson HMA states that the emails, which were "sent on the day that Jackson HMA sued Vanderlan for breaching his contract with the hospital," "reflect communications with in-house and outside counsel and communications in which hospital personnel are collecting information for the lawsuit at the direction of counsel." Jackson HMA Mem. [143] at 32–33 (CM/ECF pagination); *see* Baldwin Aff. [142-8] ¶ 26.

Having reviewed the unredacted documents *in camera*, the Court finds the communications in Exhibit 29 are subject to the attorney-client privilege because the communications were generated for the purpose of obtaining or providing legal assistance. It does not appear to the Court that these communications concern business advice rather than legal advice. But even if they did concern business advice, based on the questions posed, the answers given, and the surrounding context, it is clear that the manifest purpose of the communications is to seek or give legal advice. As to Exhibit 34, the Court finds it is protected from disclosure

4

under the work-product doctrine because the content of the email and the Baldwin Affidavit demonstrate Dupre sent it to prepare materials in anticipation of litigation as an agent of the attorney. The redactions are appropriate.

*Batch Three.* Batch Three includes documents Bates labeled JHMA-BV-17957–60, 19190–91, and 20729–33. They are Exhibits 30, 32, and 43 to Vanderlan's Motion to Compel [131] and are listed as Items 12, 54, and 13 on Jackson HMA's privilege log. Jackson HMA claims the redactions in all three documents are protected from disclosure by the attorney-client privilege and the work-product doctrine.

The first and third set of documents in Batch Three (Exhibits 30 and 43) are email strings beginning with a February 12, 2014 email from an investigative reporter with the Clarion-Ledger to a Jackson HMA employee about the newspaper's investigation into "complaints that CMMC has been improperly transferring patients that it is supposed to be treating under the state's trauma plan." Eason Feb. 12, 2014 Email (JHMA-BV-17960). Vanderlan says the redacted emails "are a response in the normal course of business to [the reporter's] request for an official response from Jackson HMA [to] the CMMC patient dumping news story." Vanderlan Mem. [135] at 38. Jackson HMA has explained how the emails in question "are requesting legal advice from counsel and counsel responding to requests for legal advice regarding privacy and labor and employment issues." Welch Decl. [131-2] at 292 (May 10, 2024 Seanor Letter). Having reviewed the unredacted portion of the emails, based on the context and the substance of these communications, the Court agrees with Jackson HMA that the communications are protected by the attorney-client privilege and were generated for the purpose of obtaining or providing legal assistance. It does not appear to the Court that these communications concern business advice rather than legal advice, but even if they did it is clear that the manifest purpose of the

communications was to seek or give legal advice to evaluate possible legal claims. And at least

one of these emails, the final email in Exhibit 43, is a direct request to outside counsel Tom

Kirkland for legal advice related to the earlier communications for legal advice with in-house

counsel. This ultimate consultation for outside counsel's legal opinions corroborates that the

manifest purpose of the earlier emails in Exhibits 30 and 43 was for legal advice. In light of this

finding that the attorney-client privilege applies, the Court does not address the work-product

doctrine. *Enron Corp. Sav. Plan*, 258 F.R.D. at 161; *Ferko*, 218 F.R.D. at 136.

As to the second set of documents in Batch Three (Exhibit 32), it begins with a February

23, 2014 email from Rick Carlton, who was then "the Central Mississippi Trauma Region

Chair," to Jackson HMA employee Charlotte Dupre and others. Vanderlan Mem. [135] at 29.

The email attaches a draft of a letter to Vanderlan notifying him that, unless he is "on the

medical staff of another hospital in the Central Mississippi Trauma Region and approved by

them as a representative to the Clinical Care Committee," Vanderlan is "no longer on the

committee." Feb. 22, 2014 Draft Letter (JHMA-BV-19191). The redacted email is one from

Dupre forwarding it to in-house counsel Clifton Smith and others and, according to Jackson

HMA, "reflects information provided to [Smith] in the context of asking for legal advice

regarding labor and employment and privacy issues and collecting information at the request of

counsel in anticipation of litigation." Welch Decl. [131-2] at 293 (May 10, 2024 Seanor Letter).

Having reviewed an unredacted copy of that email *in camera*, the Court is not convinced

Jackson HMA has shown Dupre's communication to Smith and others is protected from

disclosure by the attorney-client privilege or work-product doctrine. The Court therefore directs

Jackson HMA to produce an unredacted copy of JHMA-BV-19190 (Exhibit 32) to Vanderlan

within 7 days of this Order.

***Batch Four.*** Batch Four includes documents Bates labeled JHMA-BV-20462–63 and 20467–69. They are Exhibits 40 and 41 to Vanderlan's Motion to Compel [131] and are listed as Items 425 and 426 on Jackson HMA's privilege log. Jackson HMA claims the attorney-client privilege and work-product doctrine as to both documents. Both documents begin with unredacted communications from Norman Miller, the Executive Director of the Central Mississippi Trauma Region, to Jackson HMA's outside counsel Katie Gilchrist. *See* Baldwin Aff. [142-8] ¶ 15. The redacted emails that follow those are between and among Gilchrist and Jackson HMA's other outside and in-house counsel—Louise Joy and Clifton Smith.

Vanderlan says that Miller "was not represented by Jackson HMA counsel" and suggests that his initial communication to Jackson HMA's counsel somehow strips the subsequent conversations between Jackson HMA's counsel of their privilege. Vanderlan Mem. [135] at 31. But the subsequent emails among counsel do not include Miller and, based on their context and substance, are clearly covered by the attorney-client privilege because they were generated for the purpose of obtaining legal assistance from outside counsel for Jackson HMA. The Court finds the redactions of privileged communications appropriate. There is no need for the Court to address the work-product doctrine. *Enron Corp. Sav. Plan*, 258 F.R.D. at 161; *Ferko*, 218 F.R.D. at 136.

***Batch Five.*** Batch Five includes documents Bates labeled JHMA-BV-19192–98, 19199– 201, 19202–08, 19209–14, 19215–20, 19221–25, 19226–30, 19231–33, 19234–36, and 19237– 38. They are all contained within Exhibit 50 to Vanderlan's Motion to Compel [131] and are listed as Items 44, 43, 42, 40, 38, 32, 25, and 21 on Jackson HMA's privilege log. As to these documents, Vanderlan wants Jackson HMA "to explain why the documents were produced since they do not appear to involve Dr. Vanderlan." Vanderlan Mem. [135] at 33. Jackson HMA notes

7

that Vanderlan "provides no support for his request" that Jackson HMA be required to "explain the reason it produced [these] documents." Jackson HMA Mem. [143] at 3 n.3. Because Vanderlan does not challenge Jackson HMA's claim that the redacted portions of the documents are protected from disclosure by the attorney-client privilege and work-product doctrine, the Court finds *in camera* review of the Batch Five documents was improvidently granted.

**Batch Six.** Batch Six includes documents Bates labeled JHMA-BV-20777–82 and 20783–87. Together they comprise Exhibit 47 to Vanderlan's Motion to Compel [131] and are listed as Items 365 and 366 on Jackson HMA's privilege log. Vanderlan admits that the issue as to these documents will only become ripe if Judge Jordan reverses a decision by Judge Ball regarding the scope of discovery. Vanderlan Mem. [135] at 33. Judge Jordan has now affirmed Judge Ball's ruling. Order [171]. That affirmance renders the request for *in camera* review of these documents moot.

In sum, the Court directs Jackson HMA to produce an unredacted copy of JHMA-BV-19190 to Vanderlan within 7 days of this Order. In all other respects, Vanderlan's request that Jackson HMA lift the redactions discussed herein is denied.

**SO ORDERED AND ADJUDGED** this the 20th day of May, 2025.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE